**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2883
_____

In Re: THOMAS F. HOFFNER, JR.,
Petitioner
_____

On Application for Leave to File a
Successive Habeas Petition
pursuant to 28 U.S.C. § 2255(h)(2)
related to E.D. Pa. No. 2-00-cr-00456
before the Honorable Harvey Bartle, III, District Judge
_____

Argued: July 18, 2017
_____

Before: McKEE, AMBRO and RESTREPO, <u>Circuit Judges</u>.

(Filed: September 7, 2017)
_____

Lisa B. Freeland  [ARGUED]
Office of Federal Public Defender
1500 Liberty Center
1001 Liberty Avenue
Pittsburgh, PA 15222

*Counsel for Petitioner*

Louis D. Lappen
Robert A. Zauzmer [ARGUED]
Emily McKillip
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

*Counsel for Respondent*

_____

OPINION OF THE COURT
_____


RESTREPO, <u>Circuit Judge</u>.

In *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Supreme Court held that the residual clause of the Armed Career Criminal Act (ACCA) is unconstitutionally vague. An identical residual clause existed until recently in the Federal Sentencing Guidelines' career offender guideline, U.S.S.G. § 4B1.2(a)(2). Petitioner Thomas Hoffner was sentenced as a career offender based on this residual clause in 2002. He seeks our authorization to challenge his sentence via a successive habeas corpus petition, 28 U.S.C. § 2255(h)(2).

The ultimate question is whether Hoffner has a meritorious vagueness claim under *Johnson*. But that is not the question before us now. The only issue we must decide is whether Hoffner has made a "prima facie showing,"

28 U.S.C. § 2244(b)(3)(C), of the pre-filing requirements for a successive habeas corpus petition. To answer this seemingly simple question, we must cover some rocky terrain. We consider *Johnson* and its progeny, as well as the pre-filing requirements for a second or successive habeas petition. We conclude that Hoffner has made a prima facie showing, and so we will authorize his successive habeas petition.[1]

## I.     Factual and Procedural Background

In 2002, Hoffner was convicted of conspiracy to distribute methamphetamine, 21 U.S.C. § 846, distribution of methamphetamine, 21 U.S.C. § 841(a)(1), and unlawful use of a communication facility, 21 U.S.C. § 843(b). At sentencing, the District Court applied the career offender guideline, U.S.S.G. § 4B1.1, based upon two prior convictions Hoffner incurred in Pennsylvania state court in the 1980s. The first was for simple assault and the second was for burglary, robbery and conspiracy. He was sentenced to twenty years' imprisonment and five years' supervised release.[2]

---

[1]     For ease of reference, we use "habeas corpus petition" or "habeas petition" to refer to a petition filed under 28 U.S.C. § 2255. *See Castro v. United States*, 540 U.S. 375, 377 (2003) (referring interchangeably to "habeas motion" and "§ 2255 motion").

[2]   Hoffner was sentenced on May 29, 2002 under the 2001 edition of the Sentencing Guidelines. *See* 18 U.S.C. § 3553(a)(4)(A); U.S.S.G. § 1B1.11. Without the career offender guideline, Hoffner's offense level would have been

Hoffner filed a direct appeal and a habeas corpus petition, which we rejected. *United States v. Hoffner*, 96 F. App'x 85 (3d Cir. 2004); *United States v. Hoffner*, No. 00-cr-00456, 2005 WL 3120269 (E.D. Pa. Nov. 21, 2005), *appeal denied* No. 05-5478 (3d Cir. July 18, 2006). In 2012, he filed an unauthorized second habeas corpus petition. In 2015, he filed the *pro se* motion before us seeking to file a successive habeas corpus petition under *Johnson*. We appointed counsel, requested briefing, and held oral argument.

## II.    *Johnson* and Its Progeny

### A.    *Johnson*

In *Johnson*, the Supreme Court considered a due process challenge to the residual clause of the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii). The ACCA applies to a defendant convicted of being a felon in possession of a firearm under 18 U.S.C. § 922(g). Ordinarily, "the law punishes violation of this ban by up to 10 years' imprisonment." *Johnson*, 135 S. Ct. at 2555 (citing 18 U.S.C. § 924(a)(2)). However, if a defendant is an "armed career criminal," the ACCA imposes a mandatory minimum

---

34 and his criminal history category IV, for a Guideline range of 210 to 262 months. Applying the career offender guideline increased his Guideline range to 360 months to life. Continuing the Guideline calculations, the District Court found that Hoffner's criminal history category substantially overstated the seriousness of his criminal history. U.S.S.G. § 4A1.3. The District Court departed downward, producing a final, mandatory Guideline range of 210 to 262 months.

4

sentence of fifteen years and a statutory maximum sentence of life.  *Id.* (citing 18 U.S.C. § 924(e)(1)).[3]

A defendant is an "armed career criminal" if, in relevant part, he "has three or more earlier convictions for a 'serious drug offense' or a 'violent felony.'"  *Id.* (citing 18 U.S.C.  § 924(e)(1)).  Pre-*Johnson*, the definition of "violent felony" had three clauses—one enumerating offenses, one enumerating elements, and the residual clause. 18 U.S.C.  § 924(e)(2)(B).  The residual clause defined a crime as a "violent felony" if it "otherwise involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(ii); *see also Johnson*, 135 S. Ct. at 2557.

In *Johnson*, the Supreme Court struck the ACCA residual clause as unconstitutionally vague.  *Johnson*, 135 S. Ct.  at  2563.   The  Court  explained  that  the  Fifth Amendment's vagueness doctrine bars the Government from "taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement."  *Id.* at 2556.  These principles apply to laws "defining elements of crimes" or "fixing sentences."  *Id.* at 2557.  The ACCA was a law "fixing sentences."  *Beckles*, 137 S. Ct. at 892.  Its residual clause denied defendants "fair notice" and "invite[d] arbitrary enforcement by judges."  *Johnson*, 135 S. Ct. at 2557.  Thus, *Johnson* held that "[i]ncreasing a defendant's sentence under

---

[3]  A sentencing court can depart from the mandatory minimum  sentence  only  in  limited  circumstances. *Cf.* 18 U.S.C. § 3553(e).

5

the clause denies due process of law." *Id.*

**B.** *Welch*

The Supreme Court quickly resolved the issue of *Johnson*'s retroactivity in *Welch v. United States*, 136 S. Ct. 1257 (2016). *Welch* held that *Johnson* is retroactive to cases on collateral review. *Id.* at 1264.

In *Welch*, the Supreme Court applied the retroactivity test set forth in *Teague v. Lane*, 489 U.S. 288 (1989). *Teague* provides that "new constitutional rules of criminal procedure" are generally not retroactive to cases on collateral review. *Welch*, 136 S. Ct. at 1264 (quoting *Teague*, 489 U.S. at 310). However, "two categories of decisions . . . fall outside this general" retroactivity bar: "new substantive rules" and "watershed rules of criminal procedure." *Id.* (emphasis and citations omitted). A procedural rule "regulate[s] only the manner of determining the defendant's culpability." *Id.* at 1265 (emphasis and citation omitted). A substantive rule "alters the range of conduct or the class of persons that the law punishes." *Id.* at 1264-65 (citation omitted).[4]

*Welch* held that *Johnson* is a new "substantive" rule because it alters "the substantive reach of the [ACCA]" such that a defendant can no longer be sentenced as an armed career criminal "based on" the residual clause. *Id.* at 1265; *see also Montgomery v. Louisiana*, 136 S. Ct. 718, 734 (2016). Conversely, *Johnson* is not "procedural" because it "had nothing to do with the range of permissible methods a

---

    [4] We need not address the category "watershed rules of criminal procedure."

court might use to determine whether a defendant should be sentenced under the [ACCA]." *Welch*, 136 S. Ct. at 1265.

### C. *Johnson* **Challenges to the Career Offender Guideline**

From *Johnson* grew challenges to another residual clause, the one contained in the career offender guideline. The career offender guideline is a severe sentencing enhancement for certain recidivist offenders. It "specif[ies] a sentence to a term of imprisonment at or near the maximum term." 28 U.S.C. § 994(h).

The career offender guideline applies to a defendant where, *inter alia*, "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense" and "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Until recently, the career offender guideline defined a "crime of violence" as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use

7

> of explosives, *or otherwise
> involves conduct that presents a
> serious potential risk of physical
> injury to another*.

*Beckles v. United States*, 137 S. Ct. 886, 890-91 (2017) (emphasis in original) (quoting U.S.S.G. § 4B1.2(a)).[5]

In this definition, the final clause is the residual clause. It is identical to the ACCA residual clause struck in *Johnson*. *Compare* 18 U.S.C. § 924(e)(2)(B)(ii) ("or otherwise involves conduct that presents a serious potential risk of physical injury to another"), *with* U.S.S.G. § 4B1.2(a)(2) ("or otherwise involves conduct that presents a serious potential risk of physical injury to another"). For this reason, the residual clause was struck from the career offender guideline prospectively, effective August 1, 2016. U.S.S.G. Supp. App. C, Amend. 798.

### 1. *Booker*

Before its elimination, the residual clause of the career offender guideline had been effective since November 1,

---

[5] *Beckles* quoted the 2006 edition of the Sentencing Guidelines. *Beckles*, 137 S. Ct. at 890. This definition is the same as the 2001 edition, under which Hoffner was sentenced. *See id.* at 890 n.1 (citing 18 U.S.C. § 3553(a)(4)(A)). It is also the same as the 2000 edition, which was used to create Hoffner's Presentence Investigation Report.

1989. U.S.S.G. Supp. App. C, Amend. 268.[6] Significantly, its use spanned two eras in sentencing under the Federal Sentencing Guidelines—the pre- and post-*United States v. Booker*, 543 U.S. 220 (2005), eras. We pause briefly to review this distinction, as it is necessary to our analysis.

In the earlier, pre-*Booker* era, the Sentencing Guidelines had "the force and effect of laws" and were "mandatory and binding on all judges." *Id.* at 233-34. A sentencing court was required to "impose a sentence of the kind, and within the range," set by the Guidelines. *Id.* at 234 (quoting 18 U.S.C. § 3553(b)). Although the sentencing court could depart from the range, departures were based on "only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." 18 U.S.C. § 3553(b). "In most cases, as a matter of law, the Commission . . . adequately t[ook] all relevant factors into account, and no departure [was] legally permissible." *Booker*, 543 U.S. at 234.

In *Booker*, the Supreme Court held that the Sentencing Guidelines violated the Sixth Amendment. *Id.* at 226-27. In a separate, remedial opinion, the Court rendered the Guidelines "advisory." *Id.* at 245. In the current, post-*Booker* era, a sentencing court must "consider Guidelines ranges" but may "tailor the sentence in light of other statutory concerns as well." *Id.* at 245 (citing 18 U.S.C. § 3553(a)). In addition to the Guidelines, a sentencing court considers the parties' arguments and the Section 3553(a) factors; the

---

[6] Previously, the career offender guideline defined a "crime of violence" under 18 U.S.C. § 16. *See* U.S.S.G. § 4B1.2(1) (U.S. Sentencing Comm'n 1988).

appropriate sentence may vary from the range. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006).

## 2. *Beckles*

In *Beckles*, the Supreme Court rejected a *Johnson* challenge to the career offender guideline's residual clause, as applied under the advisory, post-*Booker* Guidelines. *Beckles*, 137 S. Ct. at 890. *Beckles* held that that "the advisory Guidelines are not subject to vagueness challenges." *Id.*

The issue in *Beckles* was whether the advisory Guidelines "*fix the permissible sentences* for criminal offenses" such that they can be challenged as vague. *Id.* at 892 (emphasis in original). *Beckles* held that they do not. Rather, the advisory Guidelines "merely guide the exercise of a court's discretion." *Id.* The Court further explained that the two principles governing the vagueness doctrine—notice and arbitrary enforcement—do not apply to the advisory Guidelines. *Id.* at 894. As to notice, the "'due process concerns that . . . require notice in a world of mandatory Guidelines no longer' apply" when the Guidelines are advisory. *Id.* (ellipses in original) (quoting *Irizarry v. United States*, 553 U.S. 708, 714 (2008)). As to arbitrary enforcement, the advisory Guidelines are not "enforced" at all, and so cannot be enforced arbitrarily. *Id.* at 895.

*Beckles* limited its holding to the advisory Guidelines. *Id.* at 890. It did not address the pre-*Booker* era, when the Sentencing Guidelines were "mandatory and binding on all judges," who were required to sentence within the range. *Booker*, 543 U.S. at 233. In a concurring opinion in *Beckles*, Justice Sotomayor noted that the majority left "open the

10

question whether defendants sentenced to terms of imprisonment before [the Supreme Court's] decision in *United States v. Booker*—that is, during the period in which the Guidelines *did* 'fix the permissible range of sentences,'— may mount vagueness attacks on their sentences." *Id.* at 903 n.4 (Sotomayor, J., concurring) (citations omitted).[7]

## III.  Second or Successive Habeas Corpus Petitions

Hoffner was sentenced based upon the career offender guideline's residual clause during the pre-*Booker*, mandatory Guidelines era.  He seeks our authorization to file a successive habeas corpus petition challenging his sentence in light of *Johnson*.  We turn then to the requirements for a second or successive habeas petition, set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).

AEDPA created a statutory "gatekeeping mechanism" for second or successive habeas petitions.  *Felker v. Turpin*, 518 U.S. 651, 657 (1996) (quotation marks omitted).  For a federal prisoner, like Hoffner, a "second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals."  28 U.S.C. § 2255(h); *see also In re Turner*, 267 F.3d 225, 227 (3d Cir. 2001).  Section

---

[7]  *Beckles* abrogated in part *United States v. Calabretta*, 831 F.3d 128 (3d Cir. 2016), a direct appeal in which we held that the career offender guideline's residual clause is unconstitutionally vague. *Id.* at 137 & n.10.  In this opinion, we need not parse what portions of *Calabretta* survive *Beckles* because, as explained below, we are not evaluating Hoffner's claim on the merits.

2244(b)(3) is the gatekeeping provision. *Felker*, 518 U.S. at 657.[8] It requires a petitioner to "move in the appropriate court of appeals for an order authorizing the district court to consider" a second or successive habeas petition. 28 U.S.C. § 2244(b)(3)(A). The appellate court "may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing" of the pre-filing requirements. 28 U.S.C. § 2244(b)(3)(C).

## A. Pre-Filing Requirements

The pre-filing requirements for a second or successive habeas petition for a federal prisoner are set forth at 28 U.S.C. § 2255(h). A Section 2255(h) motion may be based upon "newly discovered evidence" or a qualifying "new rule of constitutional law." 28 U.S.C. § 2255(h). For the latter, the pre-filing requirements consist of "three prerequisites." *Tyler v. Cain*, 533 U.S. 656, 662 (2001). "First, the rule on which the claim relies must be a 'new rule' of constitutional law; second, the rule must have been 'made retroactive to cases on collateral review by the Supreme Court'; and third, the claim must have been 'previously unavailable.'" *Id.*[9]

---

[8] Section 2244(b)(3) applies directly to a state prisoner, without the cross-reference from Section 2255(h). *Felker*, 518 U.S. at 657.

[9] *Tyler* quoted 28 U.S.C. § 2254(b)(2)(A) because it involved a state prisoner. These requirements are "identical" to the parallel requirements of 28 U.S.C. § 2255(h)(2). *In re Olopade*, 403 F.3d 159, 162 n.3 (3d Cir. 2005). "Due to this identity of language, we have applied the *Tyler* holding to federal prisoners seeking to file second or successive habeas

12

Although few in number, the pre-filing requirements of Section 2255(h)(2) are difficult to satisfy. The Supreme Court itself must issue the retroactivity decision, either expressly or through a series of decisions. *Tyler*, 533 U.S. at 663; *see also In re Olopade*, 403 F.3d at 162; *In re Turner*, 267 F.3d at 229. Moreover, "because of the interplay between" the pre-filing requirements and the statute of limitations, 28 U.S.C. § 2255(f)(3), "an applicant who files a second or successive motion seeking to take advantage of a new rule of constitutional law will be time barred except in the rare case in which this Court announces a new rule of constitutional law and makes it retroactive within one year." *Dodd v. United States*, 545 U.S. 353, 359 (2005).[10]

### B. Prima Facie Showing

In our gatekeeping role, we assess whether the

applications." *Id.* This is so although there is a slight difference between the two sections. Section 2244(b)(2)(A) asks whether a claim "relies on" a qualifying new rule. 28 U.S.C. § 2244(b)(2)(A). Section 2255(h) asks whether the motion "contain[s]" a qualifying new rule. 28 U.S.C. § 2255(h). In *Olopade*, we did not deem this to be a "relevant portion" of the text. *Olopade*, 403 F.3d at 162 n.3; *see also In re Encinias*, 821 F.3d 1224, 1225 n.2 (10th Cir. 2016) (per curiam) (equating "contain" with "rel[y] on").

[10] *Johnson* is such a "rare case." *Dodd*, 545 U.S. at 359. The Supreme Court decided *Johnson* on June 26, 2015. On April 18, 2016, the Court held in *Welch* that *Johnson* is retroactive.

petitioner has satisfied the pre-filing requirements of Section 2255(h) at only a "prima facie" level. 28 U.S.C. § 2244(b)(3)(C). Although AEDPA does not define "prima facie," the context of Section 2244(b) confirms that we hold the petitioner to a light burden. The same subsection directs us to make our prima facie determination "not later than 30 days after the filing of the motion." 28 U.S.C. § 2244(b)(3)(D).[11] It provides that the "grant or denial of an authorization . . . to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari." 28 U.S.C. § 2244(b)(3)(E). It also provides that after our authorization, a district court shall consider anew whether the petitioner has "show[n] that the claim satisfies the requirements of this section." 28 U.S.C. § 2244(b)(4). This context demonstrates that we "do not have to engage in . . . difficult legal analysis" in our gatekeeping role. *Tyler*, 533 U.S. at 664.

Consistent with the text and context, we have defined a "prima facie showing" as a "sufficient showing" that the petitioner has satisfied the pre-filing requirements "to warrant a fuller exploration by the district court." *Goldblum v. Klem*, 510 F.3d 204, 219 & n.9 (3d Cir. 2007) (quoting *Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997)). Put differently, we authorize a second or successive habeas petition where there is some "reasonabl[e] likel[ihood]" that the motion satisfies the pre-filing requirements of Section 2255(h)(2). *Id.* at 219 (quoting *Bennett*, 119 F.3d at 469); *see also* 2-28 Hertz & James S. Liebman, *Federal Habeas*

---

[11] The thirty day time limit is "advisory or hortatory rather than mandatory." *In re Siggers*, 132 F.3d 333, 335 (6th Cir. 1997).

*Corpus Practice and Procedure* § 28.3(d) & n.122 (2015). We do not consider the merits of the claim. *In re Pendleton*, 732 F.3d 280, 282 n.1 (3d Cir. 2013) (per curiam); *Goldblum*, 510 F.3d at 219 n.9.

## IV. Analysis

The parties agree, as they must under *Welch*, that *Johnson* is "[1] a new rule of constitutional law, [2] made retroactive to cases on collateral review by the Supreme Court, [3] that was previously unavailable." 28 U.S.C. § 2255(h)(2). These are generally the "three prerequisites" for a motion under Section 2255(h). *Tyler*, 533 U.S. at 662. The Government nevertheless opposes Hoffner's motion for authorization to file a successive habeas petition. It argues that Hoffner has not made a prima facie showing of one portion of the first prerequisite, that *Johnson* is "the rule on which the claim *relies*." *Id.* (emphasis added).

### A. Relies

This Court has not previously focused on what is required for a claim to "rel[y]" on a qualifying new rule for the purposes of Section 2255(h)(2). *Id.* Our precedent dictates that the answer cannot be whether the claim has merit, because we do not address the merits at all in our gatekeeping function. *In re Pendleton*, 732 F.3d at 282 n.1; *Goldblum*, 510 F.3d at 219 n.9. We now hold that whether a claim "relies" on a qualifying new rule must be construed permissively and flexibly on a case-by-case basis.

Our interpretation is based first on the text of Section 2255(h)(2), which supports a permissive and flexible

15

approach to whether a petitioner "relies" on a qualifying new rule. *See Maslenjak v. United States*, 137 S. Ct. 1918, 1924 (2017) ("We begin, as usual, with the statutory text."). The Supreme Court has enumerated the pre-filing requirements as "three prerequisites." *Tyler*, 533 U.S. at 662. Of these, the first is that "the rule on which the claim relies must be a 'new rule' of constitutional law." *Id.* While this prerequisite does refer to a rule on which the claim "relies," *Tyler* does not give any freestanding weight to this term. *Id.* Similarly, when we described the "relevant portion" of the text, we did not include reliance. *Olopade*, 403 F.3d at 162 n.3. Even the Government concedes that Section 2255(h)(2) has "no express requirement that the 'new rule' must actually pertain to the petitioner's claim." Br. for Respondent 22 n.6.

The context of Section 2244(b) also supports interpreting "relies" permissibly and flexibly. *See King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) (emphasizing that we read statutory text in context). As explained above, Congress has mandated that the "grant or denial of an authorization . . . shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari." 28 U.S.C. § 2244(b)(3)(E); *see also Felker*, 518 U.S. at 654 (upholding this subsection). This creates an asymmetry in the impact of our gatekeeping decision on a particular case. *See Evans-Garcia v. United States*, 744 F.3d 235, 239 (1st Cir. 2014); *Ochoa v. Sirmons*, 485 F.3d 538, 542 n.5 (10th Cir. 2007) (per curiam). On one hand, if we erroneously deny authorization, the petitioner "will have no opportunity to appeal or seek rehearing." *Evans-Garcia*, 744 F.3d at 239. On the other hand, "if we err in granting certification, ample opportunity for correcting that error will remain." *Id.* The district court will have the opportunity to determine anew

whether the petitioner has "show[n] that the claim satisfies the requirements of this section," 28 U.S.C. § 2244(b)(4), and whether the habeas petition has merit, *In re Pendleton*, 732 F.3d at 282 n.1; *Goldblum*, 510 F.3d at 219 n.9. In turn, we may review the district court's decision. *See* 28 U.S.C. § 2253.

At a policy level, a flexible, case-by-case approach advances two ends—the need to meet new circumstances as they arise, and the need to prevent injustice. *Cf. Holland v. Florida*, 560 U.S. 631, 650 (2010) (describing these ends in a different context). Both concerns are at the fore in Section 2255(h)(2) motions. Such motions may involve rules that are "new" (therefore difficult to foresee) and "substantive," thereby involving a particular type of injustice—a "conviction or sentence that the Constitution deprives the [Government] of power to impose," *Montgomery*, 136 S. Ct. at 732; *cf. id.* (noting that "the retroactive application of substantive rules does not implicate a State's weighty interests in . . . finality").

The above considerations of text, context and equity are encapsulated by the scholarly dissenting opinion of Judge Elrod in *In re Arnick*, 826 F.3d 787, 789 (5th Cir. 2016) (Elrod, J., dissenting). As Judge Elrod observes, a motion "relies" on a qualifying new rule where the rule "substantiates the movant's claim." *Id.* This is so even if the rule does not "conclusively decide[]" the claim or if the petitioner needs a "non-frivolous extension of a qualifying rule." *Id.* at 789-90. Section 2255(h)(2) does not require that qualifying new rule be "the movant's *winning* rule," but "only that the movant rely on such a rule." *Id.* at 790 (emphasis in original).

It is for the district court to evaluate the merits of the

17

second or successive habeas petition in the first instance. This includes "whether the invoked new rule should ultimately be extended in the way that the movant proposes" or whether his "reliance is misplaced." *Id.* at 791. Other Circuits agree. *See, e.g.*, *In re Hubbard*, 825 F.3d 225, 231 (4th Cir. 2016) (holding that "it is for the district court to determine whether the new rule extends to the movant's case, not for this court in this proceeding"); *In re Williams*, 759 F.3d 66, 72 (D.C. Cir. 2014) (holding that whether the qualifying new rule "extends" to the petitioner "goes to the merits of the motion and is for the district court, not the court of appeals").

## B. Precedent

The above considerations dictate that we should apply a permissive and flexible, case-by-case approach to deciding whether a petitioner "relies" on a qualifying new rule (again, at a prima facie level). Implementing such an approach, we look to precedent as a guide while recognizing that future "new" rules may be difficult to foresee.

First, we turn to identical *Johnson* challenges to the career offender guideline's residual clause in pre-*Booker*, mandatory Guideline cases. The Second, Sixth, Fourth and Tenth Circuits have all authorized second or successive habeas petitions challenging this residual clause in light of *Johnson*. *See Vargas*, No. 16-2112 (2d Cir. May 8, 2017) (authorizing successive habeas petition, as "*Beckles* did not clearly foreclose" petitioner's *Johnson* claim under the mandatory Guidelines); *In re Patrick*, 833 F.3d 584, 589 (6th Cir. 2016) (holding that petitioner "easily satisf[ied]" the prima facie standard); *In re Hubbard*, 825 F.3d at 231

(holding that petitioner made a prima facie showing based upon *Johnson*); *In re Encinias*, 821 F.3d at 1226 (holding that petitioner sufficiently "rel[ied] on" *Johnson* to permit authorization).[12] We find these decisions persuasive.[13]

We also draw upon decisions authorizing second or successive habeas petitions for juveniles sentenced to mandatory life without parole under *Graham v. Florida*, 560 U.S. 48 (2010), and *Miller v. Alabama*, 567 U.S. 460 (2012).[14] Most important of these is our own decision authorizing second or successive habeas petitions for three juvenile offenders in *In re Pendelton*, 732 F.3d at 283.

In *Pendleton*, our Court authorized a successive habeas

---

[12] We acknowledge that only *Vargas* post-dates *Beckles*, which was decided on March 6, 2017. However, *Beckles* does not abrogate the other Circuit decisions because, *inter alia*, they involve the pre-*Booker*, mandatory Guidelines.

[13] In contrast, we do not follow the Eleventh Circuit, which—contrary to our precedent—resolved a merits question in the context of a motion to authorize a second or successive habeas petition. *In re Griffin*, 823 F.3d 1350, 1354 (11th Cir. 2016) (holding that the mandatory career offender guideline cannot be challenged as vague).

[14] *Graham* held that juvenile life-without-parole sentences for non-homicide offenses violate the Eighth Amendment. 560 U.S. at 82. *Miller* held unconstitutional a mandatory juvenile life-without-parole sentence for homicide. 567 U.S. at 465.

petition for petitioner Corey Grant, who was sentenced to life imprisonment under the mandatory Guidelines after his downward departure request was denied. *See* Br. for Respondent, *In re Grant*, 732 F.3d 280 (3d Cir. 2013) (No. 13-1455), 2013 WL 4505735, *29-31. The Government agreed that *Miller* was a qualifying new rule. However, it opposed Grant's motion because his life sentence was arguably discretionary, and *Miller* did not invalidate "a discretionary life-without-parole sentence." *Id.* at *36. The Government asserted that Grant could refile "[s]hould the Supreme Court someday foreclose such sentences." *Id.* We rejected this argument and authorized the petition based on *Miller*. *In re Pendleton*, 732 F.3d at 282 n.1. We explained that "whether Grant actually qualifie[d] for relief under *Miller*" was a merits question for the district court to answer in the first instance. *Id.*

Similarly, the Fifth Circuit authorized a successive habeas petition for a juvenile sentenced to life without parole in *In re Sparks*, 657 F.3d 258 (5th Cir. 2010). The *Sparks* petitioner was convicted of aiding and abetting a carjacking resulting in death. *Id.* at 260. Notably, he filed his Section 2255(h) motion based upon *Graham* and prior to *Miller*. Because his crime resulted in death, the petitioner was arguably seeking to extend *Graham* to homicide (as the Supreme Court would later do in *Miller*). *Id.* at 260 n.1. The Fifth Circuit authorized the petition based upon *Graham*. *Id.*

The District of Columbia Circuit also authorized a successive habeas petition in the case of a petitioner serving life without parole in *In re Williams*, 759 F.3d at 72. In *Williams*, it was unclear whether the petitioner committed his crimes as a juvenile because he had participated in a

20

conspiracy spanning both his juvenile and adult years. As such, the Government argued that the petitioner was not relying on *Graham* and *Miller* but rather an "extension" of those cases. *Id.* at 70-71. Again, the Court rejected this argument and held that the petitioner "made a prima facie showing that he relie[d] on" *Graham* and *Miller*. *Id.* at 71. Whether those cases "extend[ed]" to the petitioner was a merits question for the district court. *Id.* at 72; *see also id*. at 70-71.

At the other end of the spectrum, this Court regularly declines to authorize second or successive habeas petitions that are "foreclosed by our precedent or otherwise frivolous." *In re Arnick*, 826 F.3d at 790 (Elrod, J., dissenting). To take the obvious example, we have denied *Johnson* challenges to the career offender guideline's residual clause in advisory Guidelines cases as foreclosed by *Beckles*. "Certainly a movant cannot invoke a new rule by reading it so expansively as to contradict binding precedents. The movant's requested extension also cannot be so facially implausible that he is not really 'relying' on the new rule at all." *Id.* at 791 (citations omitted).

## C.     The Eighth Circuit's Approach

In contrast to the permissive and flexible, case-by-case approach described and illustrated above, the Government proposes a different test that would strictly define when a petitioner may rely on a qualifying new rule. Specifically, the Government suggests that we take the approach of the Eighth Circuit in *Donnell v. United States*, 826 F.3d 1014 (8th Cir. 2016). We decline to do so.

21

In *Donnell*, the petitioner raised a pre-*Beckles* challenge to the career offender guideline's residual clause under the advisory Guidelines. *Id.* at 1015. The Eighth Circuit refused to authorize a second or successive habeas petition on the ground that the petitioner sought to "extend" *Johnson*. *Id.* at 1015. More specifically, the Court held that the petitioner impermissibly "urge[d] the creation of a second new rule." *Id.* at 1017.

The Eighth Circuit's approach is inconsistent with the text of Section 2255(h)(2), which contains only "three prerequisites," *Tyler*, 533 U.S. at 662, and no requirement that we scrutinize a motion to see if it would produce a "second new rule." Nor does the context of Section 2244(b) support such a position. As stated above, we ordinarily rule on a Section 2255(h)(2) motion within thirty days, 28 U.S.C. § 2244(b)(3)(D), and without the possibility of a "petition for rehearing or for a writ of certiorari," 28 U.S.C. § 2244(b)(3)(E). As the Supreme Court has observed, we do not "have to engage in . . . difficult legal analysis" under such cramped conditions. *Tyler*, 533 U.S. at 664.

The Eighth Circuit's approach may be simple to state, but it epitomizes a "difficult" analysis in practice. Although *Donnell* does not cite *Teague*, the way to determine whether a Section 2255(h) motion "urges the creation of a second new rule," *Donnell*, 826 F.3d at 1017, is to undertake a *Teague* analysis. The Government agrees. *See* Br. for Respondent 35 ("The rule that Hoffner seeks to establish . . . is a 'new' constitutional rule, because the invalidity of the guideline's residual clause . . . was not '*dictated* by precedent existing at

the time [his] conviction became final.'").[15]  Whether a rule is

[15] The Government quotes *Chaidez v. United States*, 568 U.S. 342, 347-48 (2013), which more completely explains that a "new" rule under *Teague* is one that

> "breaks new ground or imposes a new obligation" on the government.  "To put it differently," . . . "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final."  And a holding is not so dictated . . . unless it would have been "apparent to all reasonable jurists."

> But that account has a flipside. *Teague* also made clear that a case does not "announce a new rule . . . [when] it '[is] merely an application of the principle that governed'" a prior decision to a different set of facts.  As Justice Kennedy has explained, "[w]here the beginning point" of our analysis is a rule of "general application, a rule designed for the specific purpose of evaluating a myriad of factual contexts, it will be the infrequent case that

"new" under *Teague* is often uncertain. As a leading treatise puts it, a "review of circuit court decisions applying *Teague* reveals little to distinguish the rules that have been denominated 'new' from those deemed not to be 'new.' Indeed, it has become increasingly commonplace to find inter- or intra-circuit conflicts as to whether a particular rule is or is not 'new.' Such conflicts may linger for years before the Supreme Court eventually steps in to resolve the matter." 2-25 Hertz & Liebman, *supra*, § 25.5 (citations omitted). The search for a "second new rule" is thus ill-suited to the context of Section 2244(b). We decline to adopt the *Donnell* approach and need not determine whether applying *Johnson* to Hoffner would create a "second new rule."

Instead, we consider Hoffner's motion permissively and flexibly, with precedent as a guide. Like the Second, Sixth, Fourth and Tenth Circuits, we conclude that Hoffner has made a "prima facie showing," 28 U.S.C. § 2244(b)(3)(C), that he relies on *Johnson*. *See Vargas*, No. 16-2112 (2d Cir. May 8, 2017); *In re Patrick*, 833 F.3d at 589; *In re Hubbard*, 825 F.3d at 231; *In re Encinias*, 821 F.3d at 1226. We will therefore authorize Hoffner to file a successive habeas corpus petition. It will be for the District Court to determine in the first instance whether his petition has merit.

---

> yields a result so novel that it forges a new rule, one not dictated by precedent."

*Id.* at 347-48 (citations omitted).

## V.     Conclusion

For the foregoing reasons, we will grant Hoffner's Section 2255(h) motion and authorize him to file a successive habeas corpus petition in the District Court.