**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3747
_____

IN RE: FELIX ROSADO,

Petitioner
_____

On Application for Leave to File
a Second or Successive Habeas Petition
Pursuant to 28 U.S.C. § 2244(b)
Related to E.D. Pa. No. 2:07-cv-04429
District Judge: Honorable Norma L. Shapiro
_____

Argued: March 23, 2021

Before: HARDIMAN, GREENAWAY, JR., and BIBAS,
*Circuit Judges*

(Filed: August 2, 2021)
_____

Bret Grote                              [ARGUED]
ABOLITIONIST LAW CENTER
P.O. Box 8654
Pittsburgh, PA 15221

Carole L. McHugh
410 Old York Road
Jenkintown, PA 19046

*Counsel for Petitioner*

Kenneth W. Kelecic             [ARGUED]
Matthew A. Thren
BERKS COUNTY DISTRICT ATTORNEY'S OFFICE
633 Court Street, 5th Floor Services Center
Reading, PA 19601

*Counsel for Respondent*

_____

OPINION OF THE COURT
_____

BIBAS, *Circuit Judge*.

Congress made second or successive habeas petitions hard to maintain. To keep district courts from being flooded with them, AEDPA sets up a gate. And it makes courts of appeals the gatekeepers.

Felix Rosado asks us to lift the gate for him. In 1996, he was sentenced to mandatory life without parole for murder. He now argues his sentence is barred by *Miller v. Alabama*, 567 U.S. 460 (2012). But he waited more than six years after *Miller* to bring his challenge, well past AEDPA's one-year deadline

2

for asserting newly recognized rights. Plus, *Miller* is limited to prisoners who were under eighteen when they committed their crime, yet Rosado was almost eighteen and a half. So his claim does not rely on *Miller*'s new rule. We *may* deny leave based on the first flaw and we *must* deny it based on the second. Thus, we will not grant Rosado leave to file a second habeas petition.

## I. BACKGROUND

In 1995, Rosado shot and killed Hiep Nguyen. Rosado was almost eighteen and a half. Seven months later, he pleaded guilty in Pennsylvania state court to first-degree murder and was sentenced to mandatory life without parole. Over the next two decades, he collaterally attacked his conviction in state and federal court, claiming ineffective assistance of counsel. But those attacks failed.

After Rosado filed his first round of habeas petitions, the Supreme Court decided *Miller*. It held that the Eighth Amendment bars mandatory life-without-parole sentences for criminals who were under eighteen when they committed their crimes. 567 U.S. at 465. Four years later, the Court held that *Miller*'s rule applies retroactively, enabling those already sentenced as juveniles to challenge their convictions. *Montgomery v. Louisiana*, 577 U.S. 190, 206 (2016).

Two months after *Montgomery*, Rosado brought another state habeas (technically, PCRA) petition. In it, he argued that *Miller*'s rule applies to his case. The state courts dismissed his petition as time-barred and then affirmed that dismissal.

So Rosado now returns to federal court. In 2018, he asked for permission to file a second federal habeas petition under 28

U.S.C. §2254. Though AEDPA (the Antiterrorism and Effective Death Penalty Act of 1996) normally bars second or successive petitions, there are two narrow exceptions. Rosado claims that he falls within one of them because, he says, he relies on *Miller*'s new, retroactive rule. §2244(b)(2)(A).

Before letting a prisoner file a second or successive habeas petition in district court, the court of appeals must verify that the petition falls within one of those exceptions to AEDPA's bar. §2244(b)(3)(C). And in the years after *Miller*, many prisoners who had committed crimes as young adults and are serving mandatory life sentences have sought our leave to file new habeas petitions based on *Miller*. Before we allow that, we must decide whether these claims do indeed *rely* on *Miller*. Plus, many of these inmates brought their requests long after *Miller*. If we let them go forward, district courts will likely dismiss many of them as untimely. But we have never decided whether we may consider timeliness as part of our gatekeeping review. Both issues are litigated often and likely to recur, so we now give guidance on both.

## II. WE MAY DENY ROSADO'S APPLICATION AS UNTIMELY

Rosado faces at least two hurdles. To get leave to file, he must make a prima facie showing that he relies on *Miller*. But if he gets to the District Court, he will also face a time bar. Applicants like Rosado who rely on new constitutional rules have one year to file after the Supreme Court's decision. §2244(d)(1)(C). The state says that we can deny leave to file on this basis; Rosado disagrees.

4

The state is right. The statute gives us power to deny leave on any basis, including untimeliness. But our holding is narrow: We should deny leave based on timeliness only if the untimeliness is clear. The parties must be on notice and have a chance to respond. And there must be no unresolved factual issue or potential dispute over tolling. Rarely will all those conditions hold.

This is that rare case. If we gave Rosado leave to file, his application would be years late and ineligible for tolling. We may deny leave on that ground.

## A. We may consider timeliness at the gatekeeping stage

1. *Our gatekeeping role*. AEDPA curtails a prisoner's ability to file a second or successive habeas petition. Before he can even file in district court, he must get the court of appeals' permission. § 2244(b)(3)(A). We are AEDPA's gatekeepers. And before we open the gate, we must check that the prisoner has prima facie shown two things under § 2244(b). First, the claims must differ from any he brought before. § 2244(b)(1), (3)(C). And second, the claims must either rest on newly discovered facts or "rel[y] on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." § 2244(b)(2)(A).

After we make this prima facie finding, the District Court must check that each claim meets *all* the requirements of § 2244. § 2244(b)(4). So it must verify that each satisfies § 2244(b). It must also apply § 2244(d)'s one-year time bar. Only then may it reach the merits.

5

Our sister circuits are split on the scope of our gatekeeping review. Three circuits limit that review to the § 2244(b) requirements. *In re McDonald*, 514 F.3d 539, 543–44 (6th Cir. 2008); *Henry v. Spearman*, 899 F.3d 703, 710 (9th Cir. 2018) (citing *McDonald* approvingly in dictum); *Ochoa v. Sirmons*, 485 F.3d 538, 542–44 (10th Cir. 2007). Five others *sometimes* consider § 2244(d)'s timeliness requirement. *In re Vassell*, 751 F.3d 267, 271 (4th Cir. 2014); *In re Campbell*, 750 F.3d 523, 533–34 (5th Cir. 2014); *Johnson v. Robert*, 431 F.3d 992, 992–93 (7th Cir. 2005) (per curiam); *In re Hill*, 437 F.3d 1080, 1083 (11th Cir. 2006) (per curiam); *In re Williams*, 759 F.3d 66, 68–69 (D.C. Cir. 2014).

2. *The statutory text gives us discretion.* The latter approach squares with AEDPA's wording. We "*may* authorize the filing of a second or successive application," but "*only if*" the petitioner shows prima facie that § 2244(b) is "satisfie[d]." § 2244(b)(3)(C) (emphases added). Thus, meeting the requirements of § 2244(b) is "necessary" but not "sufficient." *Vassell*, 751 F.3d at 271 (emphases omitted). "May" leaves us discretion to deny leave for other reasons, like timeliness. If an application is obviously late, we need not ignore this glaring flaw.

To be sure, the statute tells *district courts* to apply the requirements of "this section," § 2244, including the time bar, while it tells *courts of appeals* to apply "this subsection," § 2244(b). *Compare* § 2244(b)(4), *with* § 2244(b)(3)(C). Rosado stresses the distinction between these phrases. Yet AEDPA contains no language barring our review either. So all that means is that we do not have to consider timeliness. We

6

need not, but we can. The statute itself does not limit our discretion to deny leave.

3. *We will consider timeliness only rarely.* Though we can consider timeliness, often we should not. Because we should decide whether to grant leave to file within thirty days, we do not have time to resolve complex timing questions. § 2244(b)(3)(D); *cf. In re Hoffner*, 870 F.3d 301, 307 n.11 (3d Cir. 2017) (treating this time limit as advisory).

We look by analogy to the rules governing first habeas petitions. Both district and appellate courts may, but need not, consider timeliness sua sponte. *Day v. McDonough*, 547 U.S. 198, 209 (2006); *Wood v. Milyard*, 566 U.S. 463, 473 (2012). But before doing so, the parties must have "fair notice and an opportunity to present their positions." *Day*, 547 U.S. at 210. And usually, appellate courts should not consider issues that were not developed below. Only in "exceptional cases" should they raise timeliness themselves. *Wood*, 566 U.S. at 473.

So too here. The parties must have notice and an opportunity to respond. *See Vassell*, 751 F.3d at 271. Plus, statutory or equitable tolling may save a petition. Tolling decisions are often hard and fact bound, best left to district courts in the first instance. *See Campbell*, 750 F.3d at 533–34; *In re Jackson*, 826 F.3d 1343, 1348–49 (11th Cir. 2016). We should not deny leave on timeliness unless there is no basis for further factual development and there is no potential basis for tolling.

These conditions will be satisfied only rarely. *Jackson*, 826 F.3d at 1350. Typically, we decide based only on the prisoner's initial filing. Often, the state does not respond. And usually, we

7

lack the state-court record, which we need to gauge tolling. *See id.* at 1349 (citing *Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1357–58 (11th Cir. 2007)).

But sometimes, the state responds and raises the defense. The prisoner then asserts his position. Sometimes, the facts are clear, uncontested, and offer no grounds for tolling. The decision might be as simple as comparing the date of the motion and the date when the Supreme Court announced the new rule it seeks to apply. *Moore v. United States*, 871 F.3d 72, 84 (1st Cir. 2017). If so, there is no reason to let a doomed petition proceed. That is the case here.

## B. Rosado's application is too late

Because Rosado filed his federal habeas petition six-and-a-half years after *Miller*, his petition presents a timeliness issue on its face. And unlike most applications at the gatekeeping stage, this one is fully briefed. The state objected that Rosado's petition would be untimely. He has responded, alleging that complex tolling issues prevent us from considering timeliness. But his argument rests on the mistaken premise that the clock runs from *Montgomery*, not *Miller*. That is not right.

1. *The clock began ticking after* Miller*, not* Montgomery. Rosado had one year to file from "the date on which the constitutional right asserted was *initially recognized* by the Supreme Court." § 2244(d)(1)(C) (emphasis added). The relevant date is when the Court first recognized the right, *not* when it made it retroactive. *Dodd v. United States*, 545 U.S. 353, 357 (2005). And though *Dodd* involved the limitations period for federal prisoners in § 2255(f)(3), § 2244(d)(1)(C) uses identical

language. The starting point is the same for state prisoners. *Prost v. Anderson*, 636 F.3d 578, 591 (10th Cir. 2011) (Gorsuch, J.); *Johnson*, 431 F.3d at 992–93.

*Miller* came down in 2012. So Rosado had to file by 2013. But he filed his federal petition in 2018. And he filed his state habeas (PCRA) petition in 2016, almost four years after *Miller*. So statutory tolling (while timely state petitions are pending) does not save him. § 2244(d)(2).

Still, Rosado argues that his clock runs from *Montgomery* because it removed an "impediment to filing an application created by State action." § 2244(d)(1)(B). Before *Montgomery*, the Supreme Court of Pennsylvania had held that *Miller* was not retroactive. *Commonwealth v. Cunningham*, 81 A.3d 1, 11 (Pa. 2013). So, he says, he could not exhaust his state remedies as required until after *Montgomery* corrected *Cunningham*.

We are skeptical. But even if he were right, *Cunningham* was decided in late 2013, months after Rosado's one-year clock ran out. He could have filed in both state and federal court, asking the federal court to stay and abey while his state case was pending. *See Heleva v. Brooks*, 581 F.3d 187, 192 (3d Cir. 2009). No state action prevented that.

2. *Equitable tolling is unwarranted.* We should not reject an application as untimely if the habeas petition could be rescued by equitable tolling. But no rescue is possible here. Rosado has not "in some extraordinary way been prevented from asserting his rights." *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999) (internal quotation marks and ellipses omitted).

9

Because his petition was too late even before *Cunningham*, that decision did not prevent him from timely filing.

* * * * *

If we let Rosado file his application, it would clearly be time-barred. Because the relevant facts are clear and undisputed, we *can* deny leave on this ground. And we *must* deny authorization on another basis: Rosado does not rely on *Miller*.

### III. ROSADO DOES NOT "RELY" ON *MILLER V. ALABAMA*'S NEW RULE

Rosado satisfies all but one of the statutory gatekeeping requirements. §2244(b)(2)(A). *Miller* is a "new rule of constitutional law." *Id.* It was "made retroactive to cases on collateral review by the Supreme Court" in *Montgomery*. *Id.* It was "unavailable" when Rosado filed his first habeas petition. *Id.* And it "was not presented in a prior application" for federal habeas. §2244(b)(2). The last thing he must show is that his "claim relies on" *Miller*. §2244(b)(2)(A). There, he fails.

Rosado acknowledges that *Miller* adopted a "bright line holding for persons under 18 years of age." Pet'r's Br. 15. He also concedes that he was slightly older than that when he murdered Nguyen. But because *Miller*'s reasoning rests on the science of brain development, he argues that it also bars mandatory life sentences for immature young adults, like him, "whose crimes reflect the transient immaturity of youth." *Montgomery*, 577 U.S. at 208.

Yet Rosado has not shown that he relies on *Miller*, rather than a broad expansion of it. True, his prima facie burden is

10

"light." *Hoffner*, 870 F.3d at 307. And we assess reliance case by case, "permissively and flexibly." *Id.* at 308. But the reliance requirement, though light, is not toothless. We hold that if a new rule sets out an express limit and a prisoner's claim falls beyond that limit, he cannot rely on that rule. *Miller* set a limit at eighteen years old. Rosado was older than that when he killed Nguyen. So his claim does not rely on *Miller*.

## A. An applicant cannot "rely" on a new rule if his claim falls beyond that rule's express limits

To rely on a new rule, a prisoner must show that his case plausibly falls within the rule's limits. To "rely" on something is to "depend on … [it] with full trust or confidence" or to "rest upon [it] with assurance." *Rely*, *Oxford English Dictionary* (2d ed. 1989) (def. 5).

The reliance requirement leaves prisoners some leeway. A prisoner may rely on a new rule even if he seeks to apply it to a new situation. *Hoffner*, 870 F.3d at 309. His claim need not match the Court's precise holding, as long as it follows from the broader rule supporting that holding. *Moore*, 871 F.3d at 82. As we have explained, a claim "relies" on a new rule if that rule "substantiates the … claim." *Hoffner*, 870 F.3d at 309 (quoting *In re Arnick*, 826 F.3d 787, 789–90 (5th Cir. 2016) (Elrod, J., dissenting)). That is true "even if the rule does not 'conclusively decide[ ]' the claim or if the petitioner needs a 'non-frivolous extension of'" it. *Id.*

If an opinion hints at a new rule, a litigant may later seek an extension of that suggested rule into a holding. For instance, the Supreme Court held that the residual clause of the Armed

11

Career Criminal Act was unconstitutionally vague. *Johnson v. United States*, 576 U.S. 591, 597 (2015). A prisoner then challenged the identical residual clause of the career-offender Sentencing Guideline. *Hoffner*, 870 F.3d at 302. He thus showed prima facie reliance on *Johnson*'s rule. *Id.* at 312.

But to rely on a rule, the prisoner must ground his argument within the rule's limits. He may not read it so broadly that he "contradict[s] binding precedents" or seeks a "facially implausible" extension of it. *Id.* at 311 (quoting *Arnick*, 826 F.3d at 791 (Elrod, J., dissenting)). For instance, he may not use *Miller*'s limit on mandatory sentences to challenge discretionary sentences. *Evans-Garcia v. United States*, 744 F.3d 235, 240–41 (1st Cir. 2014).

In short, we ask if the new rule sets out strict limits and if the prisoner's case falls beyond those limits. If so, he cannot rely on the new rule, and we must deny leave to file.

### B. *Miller* covers only those who were under eighteen

*Miller* drew a firm line: "those under the age of 18" cannot be sentenced to mandatory life without parole. 567 U.S. at 465. Throughout, *Miller* differentiated between "adults" (those over 18) and "children" (those under). *See, e.g.*, *id.* at 471; *see also id.* at 486 (referring to "children of any age—be it 17 or 14 or 10 or 6"). Just a few months ago, the Court recognized this line, repeatedly describing *Miller*'s holding as applying to those under eighteen. *Jones v. Mississippi*, 141 S. Ct. 1307, 1311–23 (2021); *see also United States v. Sierra*, 933 F.3d 95, 97 (2d Cir. 2019) (reading *Miller* as setting a bright line at eighteen);

*United States v. Marshall*, 736 F.3d 492, 498–99 (6th Cir. 2013) (same).

Indeed, *Miller* is part of a series of youth-sentencing cases, all of which drew the line at eighteen. *See Roper v. Simmons*, 543 U.S. 551, 568 (2005) (barring the death penalty for those under eighteen); *Graham v. Florida*, 560 U.S. 48, 74–75 (2010) (barring life-without-parole sentences for those under eighteen who did not kill).

Despite this, Rosado argues that *Miller* sets no age limit and that he falls within the class of youths protected by it. Because *Miller* mentions the age of eighteen only once and otherwise refers to "children" and "juveniles," he argues that it covers all youths who "manifest[ed] age-related immaturity" at the time of their crimes. 567 U.S. at 473, 479; Reply Br. 2. Scientific evidence, he suggests, shows that those just over eighteen are similarly immature, so *Miller* must apply to them too.

Yet the Supreme Court has already rejected that argument. In *Roper*, the Court expressly conceded Rosado's point that aging is a spectrum, not a switch flipped at eighteen. 543 U.S. at 574. But "a line must be drawn." *Id.* And *Miller*, relying on *Roper* and *Graham*, drew it at eighteen. *See* 567 U.S. at 465, 470–75. Those cases grounded that line in our society's consensus: "The age of 18 is the point where society draws the line for many purposes between childhood and adulthood." *Graham*, 560 U.S. at 74–75 (quoting *Roper*, 543 U.S. at 574).

Thus, *Miller* set a clear age limit. Rosado falls on the wrong side of that limit. And we cannot extend it. A nonfrivolous extension of a precedent cannot go beyond the precedent's bright

13

line. Someday, the Supreme Court may redraw that line. But we cannot.

* * * * *

As gatekeepers, we need not unlock AEDPA's gate for a prisoner's application that has no chance of success. On the undisputed facts, we see that Rosado filed too late and has no basis for tolling. And we cannot find that he relies on *Miller* when he falls beyond the bounds of the class that it protects. Thus, we will deny him leave to file his second habeas petition.