**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| SHEDRICK L. HENRY,<br>*Petitioner*, | No. 17-70170 |
| v. | OPINION |
| M. ELIOT SPEARMAN, Warden,<br>*Respondent*. | |

Application to File Second or Successive Petition
Under 28 U.S.C. § 2254

Argued and Submitted June 15, 2018
San Francisco, California

Filed August 6, 2018

Before: Mary M. Schroeder, David M. Ebel,[*]
and Ronald M. Gould, Circuit Judges.

Opinion by Judge Gould

---

[*] The Honorable David M. Ebel, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

## SUMMARY[**]

### Habeas Corpus

The panel granted California prisoner Shedrick Henry's motion to file a second or successive 28 U.S.C. § 2254 habeas corpus petition urging that California's second-degree felony-murder rule is unconstitutionally vague under *Johnson v. United States*, 135 S. Ct. 2551 (2015).

The panel rejected the State of California's arguments that Henry lacks standing to bring a vagueness challenge and that his claim is effectively moot. The panel held that there is a plausible position that *Johnson* did not limit its constitutional rule to certain features of the Armed Career Criminal Act's residual clause that the State contends are absent from California's second-degree felony-murder rule, and concluded that Henry has made a *prima facie* showing that his claim "relies on" the new and retroactively applicable rule of *Johnson*.

### COUNSEL

Carmen A. Smarandoiu (argued) and Todd M. Borden, Assistant Federal Public Defenders; Steven G. Kalar, Federal Public Defender; Office of the Federal Public Defender, San Francisco, California; for Petitioner.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Gregory A. Ott (argued), Deputy Attorney General; Peggy S. Ruffra, Supervising Deputy Attorney General; Jeffrey M. Laurence, Senior Assistant Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, San Francisco, California; for Respondent.

## OPINION

GOULD, Circuit Judge:

California prisoner Shedrick Henry was convicted of felony discharge of a firearm at an inhabited dwelling and second-degree murder in 1996. The jury was instructed that it could convict Henry of murder based on California's unique second-degree felony-murder rule, which imputes the requisite malice from the commission of a felony that, viewed in the abstract, is "inherently dangerous." Henry previously filed an unsuccessful federal habeas corpus petition in the U.S. District Court for the Northern District of California. He now timely moves for leave to file a second or successive 28 U.S.C. § 2254 habeas corpus petition, urging that California's second-degree felony-murder rule is unconstitutionally vague under the U.S. Supreme Court's precedent in *Johnson v. United States*, 135 S. Ct. 2551 (2015). We conclude that Henry has made the necessary showing to file another § 2254 petition, and so we grant Henry's motion to file a second or successive habeas corpus petition.

## I

The Antiterrorism and Effective Death Penalty Act ("AEDPA") instituted a "gatekeeping" procedure for screening second or successive federal habeas corpus petitions. *Felker v. Turpin*, 518 U.S. 651, 657 (1996).

Before filing such a petition in district court, a state prisoner must obtain authorization from the court of appeals. 28 U.S.C. § 2244(b)(3)(A). The court of appeals must deny the motion unless it makes a "prima facie showing" both that the motion presents a claim not previously raised and that it satisfies one of two narrow exceptions. *Id.* § 2244(b).

In this case, Henry must make a *prima facie* showing that his proposed petition "[1] relies on [2] a new rule of constitutional law, [3] made retroactive to cases on collateral review by the Supreme Court, [4] that was previously unavailable." *Id.* § 2244(b)(2)(A). Requests to file second or successive petitions usually hinge on the latter three demanding requirements, with no dispute that a petitioner's habeas corpus claim "relies on" an asserted new and retroactive rule of constitutional law. *See, e.g.*, *Tyler v. Cain*, 533 U.S. 656, 662 (2001) (recognizing only those "three prerequisites"); *Jones v. Ryan*, 733 F.3d 825, 842–43 (9th Cir. 2013) (same). Here, however, those requirements are unquestionably satisfied. In *Welch v. United States*, 136 S. Ct. 1257 (2016), the Supreme Court held that *Johnson* announced a new rule of constitutional law retroactively applicable to cases on collateral review. *Id.* at 1264, 1268. And because *Johnson* was decided in 2015, its rule was unavailable when Henry filed his previous federal habeas corpus petition more than a decade earlier. *See, e.g.*, *In re Smith*, 142 F.3d 832, 835 (5th Cir. 1998); *Felker v. Turpin*, 83 F.3d 1303, 1306 (11th Cir. 1996).

So the controlling question for us is whether Henry has made a *prima facie* showing that his petition "relies on" *Johnson*. We have never before considered what is required for a claim to "rel[y]" on a qualifying new rule for the

purposes of § 2244(b).[1]  But by its terms, § 2244(b) imposes on the petitioner only a "light burden."  *In re Hoffner*, 870 F.3d 301, 307 (3d Cir. 2017).  To begin with, a *prima facie* showing is "simply a sufficient showing of *possible* merit to warrant a fuller exploration by the district court."  *Cooper v. Woodford*, 358 F.3d 1117, 1119 (9th Cir. 2004) (*en banc*) (citation omitted).  Further, § 2244(b)(3)(D) urges courts to resolve motions to file second or successive petitions within 30 days, which "suggests that [we] do not have to engage in . . . difficult legal analysis" in our gatekeeping role.  *Tyler*, 533 U.S. at 664.  And § 2244(b)(3)(E) precludes rehearing or Supreme Court review of a panel's screening decision, which "counsels greater caution before denying an authorization than before granting one" because an erroneously denied motion cannot be corrected, while an erroneously filed petition can still be denied on its merits. *Moore v. United States*, 871 F.3d 72, 78 (1st Cir. 2017).

We agree with the Third Circuit that § 2244(b) calls for a "permissive and flexible, case-by-case approach" to deciding whether a second or successive habeas corpus petition "relies on" a qualifying new rule of constitutional law.  *In re Hoffner*, 870 F.3d at 309.  We ask whether the rule "substantiates the movant's claim," even if the rule does not "conclusively decide[]" the claim, or if the rule would need a "non-frivolous extension" for the petitioner to get relief.  *Id.* (quoting *In re Arnick*, 826 F.3d 787, 790 (5th Cir. 2016) (Elrod, J., dissenting)); *see also In re Hubbard*,

---

[1] In *United States v. Geozos*, 870 F.3d 890 (9th Cir. 2017), we discussed the required showing for a claim to "rel[y]" on a qualifying new rule of constitutional law for the purposes of analyzing the merits of a second or successive 28 U.S.C. § 2255 habeas corpus petition, not for the purposes of an application to file a second or successive habeas corpus petition under 28 U.S.C. § 2244(b), where only a "prima facie" showing is required.

825 F.3d 225, 231 (4th Cir. 2016) ("[I]t is for the district court to determine whether the new rule extends to the movant's case, not for this court in this proceeding."); *In re Williams*, 759 F.3d 66, 72 (D.C. Cir. 2014) ("[W]hether the new rule . . . extends to a prisoner like [petitioner] . . . goes to the merits of the motion and is for the district court, not the court of appeals.").

## II

Henry's petition invokes *Johnson* based on the following line of reasoning:  In *Johnson*, the Supreme Court held that the Armed Career Criminal Act's ("ACCA") residual clause was unconstitutionally vague.  The ACCA prescribes a mandatory minimum sentence if a person convicted of being a felon in possession of a firearm has three prior convictions for "violent felonies."  That statutory term includes any felony that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).  The italicized text is known as the ACCA's residual clause.  Because the ACCA looks simply to the existence of prior "violent felony" convictions, the statute requires a court to assess "whether a crime qualifies as a violent felony 'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.'"  *Johnson*, 135 S. Ct. at 2557 (quoting *Begay v. United States*, 553 U.S.

137, 141 (2008)).  "Deciding whether the residual clause covers a crime thus requires a court to picture the kind of conduct that the crime involves in 'the ordinary case,' and to judge whether that abstraction presents a serious potential risk of physical injury." *Id.* (quoting *James v. United States*, 550 U.S. 192, 208 (2007)).

The Court concluded that "[t]wo features" of the ACCA's residual clause render it unconstitutionally vague. *Id.*  First, "the residual clause leaves grave uncertainty about how to estimate the risk posed by a crime" by tying "the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements."  *Id.*  Second, "the residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony."  *Id.* at 2558.  The resulting "wide-ranging inquiry . . . both denies fair notice to defendants and invites arbitrary enforcement by judges." *Id.* at 2557.  "By combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.* at 2558.

Henry contends that the same two features of indeterminacy are at work in California's second-degree felony-murder rule.  The California Supreme Court has read the state's murder statute as codifying the common law felony-murder rule, which "makes a killing while committing certain felonies murder without the necessity of further examining the defendant's mental state." *People v. Chun*, 203 P.3d 425, 430 (Cal. 2009).  The California penal code begins by defining murder as an unlawful killing with "malice aforethought."  Cal. Penal Code § 187.  That malice

may be "express" or "implied," as when "the circumstances attending the killing show an abandoned and malignant heart." *Id.* § 188. Section 189 then defines first-degree murder to include all express malice murders and certain implied malice murders—such as a killing during the commission of arson, rape, or robbery. *See id.* § 189. That provision's residual clause classifies all other types of implied malice murders as second-degree murder. *See id.* First-degree felony murder is thus a killing during the commission of a felony enumerated in § 189. *Chun*, 203 P.3d at 430. Second-degree felony murder, however, is less clearly defined.

According to the California Supreme Court, the state's second-degree felony-murder rule covers any unlawful killing during the perpetration of a felony that is not enumerated in § 189 yet is "inherently dangerous" to human life. *Id.* (citation omitted). Unlike the felony-murder rules in all other states, California's rule takes an abstract approach to evaluating a crime's dangerousness. *See* Evan Tsen Lee, *Why California's Second-Degree Felony-Murder Rule is Now Void for Vagueness*, 43 Hastings Const. L.Q. 1, 53–56 (2015). California courts determine whether a felony is inherently dangerous by looking to "the elements of the felony in the abstract, not the particular facts" of the defendant's conduct. *Chun*, 203 P.3d at 434. At times the California Supreme Court has asked whether, "by its very nature, [the crime] cannot be committed without creating" an undue risk to human life, *People v. Burroughs*, 678 P.2d 894, 900 (Cal. 1984), while at other times it has considered the ordinary commission of a crime, "even if, at the time of the [offense]," there was no innate risk at all, *People v. Hansen*, 885 P.2d 1022, 1027 (Cal. 1994), *overruled on other grounds by Chun*, 203 P.3d 425. *Compare also, e.g.*, *People v. Howard*, 104 P.3d 107, 112 (Cal. 2005) (holding

that a felony that "can be committed without endangering human life" is not inherently dangerous), *with People v. Patterson*, 778 P.2d 549, 558 (Cal. 1989) (remanding for the trial court to evaluate "various medical articles and reports" in determining whether the felony is typically sufficiently dangerous).

Also, the risk threshold for an inherently dangerous crime is imprecise, with the California Supreme Court alternatingly describing that standard as a "substantial risk" or "high probability" that someone will be killed. *See, e.g.*, *Howard*, 104 P.3d at 111 (substantial risk); *People v. Robertson*, 95 P.3d 872, 878 (Cal. 2004) (either substantial risk or high probability); *Patterson*, 778 P.2d at 558 (high probability); *Burroughs*, 678 P.2d at 900 (substantial risk), *overruled on other grounds by Chun*, 203 P.3d 425. The "high probability" test requires more than a "substantial risk" of death. *Patterson*, 778 P.2d at 560 (Lucas, C.J., concurring and dissenting); *id.* at 567 (Mosk, J., dissenting). But it does not require that death result in "a majority, or even in a great percentage, of instances." *Robertson*, 95 P.3d at 878 (citation omitted).

Henry contends that like the ACCA's residual clause, California's second-degree felony-murder rule combines "uncertainty about how to estimate the risk posed by a crime" with "uncertainty about how much risk it takes for a crime to qualify" as a covered crime. *Johnson*, 135 S. Ct. at 2557–58. He argues first that both the residual clause and the second-degree felony-murder rule require courts to assess the degree of risk posed by a "judge-imagined abstraction," without regard for "real-world facts" or "whether creation of risk is an element of the crime." *Id.* He argues second that the risk standards are similarly indeterminate: a "serious potential risk" of injury versus a

"substantial risk" or "high probability" of causing death. Although there are many differences between the two laws, Henry's argument is that *Johnson* recognizes a vagueness problem where, as here, imprecise standards like "'substantial risk,' 'grave risk,' and 'unreasonable risk'" are applied to "a judge-imagined abstraction" of the conduct underlying a felony conviction.  135 S. Ct. at 2558, 2561.

## III

The State counters with its argument that *Johnson* cannot substantiate Henry's claim because he lacks standing to bring a vagueness challenge, his claim is moot, and *Johnson* cannot possibly be extended to California's second-degree felony-murder rule.  Our task here is limited.  We review the State's contentions merely to determine whether relief is foreclosed by precedent or otherwise is facially implausible, leaving the merits of the claim for the district court to address in the first instance.  *See In re Hoffner*, 870 F.3d at 309; *Cooper*, 358 F.3d at 1119.

## A

The State first contends that Henry has not made a *prima facie* showing that he has standing to challenge California's second-degree felony-murder rule as unconstitutionally vague.  Before *Johnson*, the Supreme Court had held that "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."  *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010) (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982)).  The State contends that Henry's conduct was clearly proscribed because the year before he committed his offense of discharging a firearm at an inhabited dwelling, the California Supreme Court held in *Hansen* that this felony

was inherently dangerous. *See* 885 P.2d at 1027. Similarly, the U.S. Supreme Court previously held that "[o]bjections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988). In the State's view, any reasonable person would know that shooting at an inhabited dwelling is inherently dangerous, even without the decision in *Hansen*.

These pre-*Johnson* decisions do not deny Henry standing to raise a facial vagueness challenge here. *Johnson* did not consider whether, as the court of appeals had held, the petitioner's conviction for unlawful possession of a sawed-off shotgun qualified as a violent felony under the ACCA's residual clause. *See* 135 S. Ct. at 2556–62. The Court instead looked past this as-applied challenge directly to the petitioner's facial challenge. In so doing, *Johnson* concluded that the Court's decisions "squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Id.* at 2560–61. The Court then struck down the residual clause in its entirety, even as to "straightforward cases." *Id.* at 2560, 2563. Henry's motion seeks to follow the same path to declaring California's second-degree felony-murder rule unconstitutional.

The Supreme Court's recent decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), supports Henry's approach. In dissent, Justice Thomas, joined by Justices Kennedy and Alito, characterized *Johnson* as implicitly holding that the ACCA's residual clause was also vague as applied to the sawed-off shotgun offense at issue in *Johnson*. 138 S. Ct. at 1250 (Thomas, J., dissenting). The dissent then concluded that *Johnson* was distinguishable because the Immigration

and Nationality Act was "not vague as applied" to Dimaya. *Id.* Citing *Holder*, *Hoffman Estates*, and *Maynard*, the dissent argued that "[w]hile *Johnson* weakened the principle that a facial challenge requires a statute to be vague 'in all applications,' it did not address whether a statute must be vague as applied to the person challenging it." *Id.* But the majority appears to have recognized and rejected this narrow interpretation of *Johnson*. *See id.* at 1214 n.3 (majority opinion). Thus, to the extent that the State's quotations from *Holder*, *Hoffman Estates*, and *Maynard* are inconsistent with *Johnson* and *Dimaya*, those cases may not reflect the current state of the law. Henry at least arguably has standing to enforce his "personal right not to be convicted under a constitutionally invalid law." *Bond v. United States*, 564 U.S. 211, 226 (2011) (Ginsburg, J., concurring); *see also id.* at 217 (majority opinion) (holding that a criminal defendant's "challenge to her conviction and sentence 'satisfies the case-or-controversy requirement, because the incarceration constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction'" (citation and alterations omitted)). And because Henry makes a *prima facie* showing for his facial challenge, he may file his entire second or successive petition—including his as-applied challenge—in the district court. *See Woratzeck v. Stewart*, 118 F.3d 648, 650 (9th Cir. 1997) (per curiam).

**B**

Next, the State contends that Henry's *Johnson* claim is "effectively" moot. The challenge to Henry's conviction, of course, is a live controversy that is not moot. *See Carafas v. LaVallee*, 391 U.S. 234, 237–38 (1968). What the State calls mootness actually goes to the merits of Henry's petition: the State argues that the California Supreme Court's silent

denial of Henry's state habeas corpus petition "implicitly" found that any instructional error was harmless under *Chapman v. California*, 386 U.S. 18 (1967).

This is the type of complicated analysis that courts of appeals are to avoid when performing their gatekeeping function under § 2244(b).  The requirement of a mere *prima facie* showing "render[s] irrelevant other possible grounds for dismissal such as ultimate lack of merit, nonexhaustion, procedural default, and the like."  Hertz & Liebman, *Federal Habeas Corpus Practice and Procedure* § 28.3[d] (7th ed. 2017); *see also, e.g.*, *In re McDonald*, 514 F.3d 539, 543–44 & n.3 (6th Cir. 2008) (declining to consider "whether [the petitioner's] claim would be deemed beyond the one-year statute of limitations" or "whether the petitioner's claims have been exhausted" in state court).  The State's harmless-error argument is properly considered by the district court, not by us at this time.

## C

Last, the State argues that *Johnson* itself precludes Henry's claim because its constitutional rule is limited to the peculiar circumstances of the ACCA's residual clause. Besides the "[t]wo features of the residual clause [that] conspire to make it unconstitutionally vague," 135 S. Ct. at 2557, *Johnson* discussed several other parts of the ACCA's text and its history in the courts as additional support for declaring that provision unconstitutional.

The State begins by pointing to the residual clause's lack of any limiting temporal language.  Without such a limitation, the ACCA required courts to evaluate the risk of injury throughout the commission of an offense, even if the injury is "remote from the criminal act"—such as the risk posed by a burglar confronting a resident after breaking into

his or her home. *Id.* at 2557–59. By contrast, the State contends, California's inherently-dangerous-felony inquiry looks only to the dangers that might occur in the course of satisfying the elements of an offense. But the State seems to be mistaken. Where relevant, the California Supreme Court has assessed the risks that may arise throughout the commission of a crime, even after its elements are formally satisfied. *See, e.g.*, *Patterson*, 778 P.2d at 551–53 (holding that a conviction for furnishing cocaine could be deemed "inherently dangerous" based on a recipient later overdosing on the drug).

The State also argues that *Johnson* is cabined to the ACCA based on the list of four crimes that precede the residual clause. After faulting the residual clause for "apply[ing] an imprecise 'serious potential risk' standard . . . to a judge-imagined abstraction," the Court went on to add:

> By asking whether the crime "*otherwise* involves conduct that presents a serious potential risk," moreover, the residual clause forces courts to interpret "serious potential risk" in light of the four enumerated crimes—burglary, arson, extortion, and crimes involving the use of explosives. These offenses are "far from clear in respect to the degree of risk each poses."

*Johnson*, 135 S. Ct. at 2558 (citation omitted). The State contends that the presence of these enumerated offenses was essential to *Johnson*'s holding, while California's second-degree felony-murder rule involves no such list. But *Dimaya* recently rejected this cramped reading of *Johnson*, explaining:

> To say that ACCA's listed crimes failed to resolve the residual clause's vagueness is hardly to say they caused the problem. Had they done so, *Johnson* would not have needed to strike down the clause. It could simply have instructed courts to give up on trying to interpret the clause by reference to the enumerated offenses. . . . . That *Johnson* went so much further—invalidating a statutory provision rather than construing it independently of another—demonstrates that the list of crimes was not the culprit. And indeed, *Johnson* explicitly said as much. As described earlier, *Johnson* found the residual clause's vagueness to reside in just "two" of its features: the ordinary-case requirement and a fuzzy risk standard. Strip away the enumerated crimes—as Congress did in [the Immigration and Nationality Act] § 16(b)— and those dual flaws yet remain. And ditto the textual indeterminacy that flows from them.

138 S. Ct. at 1221 (citations omitted).

Finally, the State contends that the history of courts struggling with the residual clause was essential to *Johnson*'s holding, and that California's second-degree felony-murder rule has no such history. After describing the residual clause's "[t]wo features" that rendered it unconstitutional, the *Johnson* Court noted that "the failure of persistent efforts to establish a standard can provide *evidence* of vagueness." 135 S. Ct. at 2558 (citation and alteration omitted) (emphasis added). The Court then wrote that the "repeated attempts and repeated failures to craft a principled

and objective standard out of the residual clause *confirm* its hopeless indeterminacy." *Id.* (emphasis added). As these quotations make clear, *Johnson* did not expressly limit its holding based on the residual clause's record in the courts, but said that this evidence confirmed its earlier holding that the residual clause is unconstitutional. *See id.* And the provision at issue in *Dimaya* lacked this troubled history, yet the Court reaffirmed that judicial experience struggling with a statute is not necessary for it to be declared impermissibly vague. *See* 138 S. Ct. at 1223.

We conclude that there is a plausible position that *Johnson* did not limit its constitutional rule to certain features of the ACCA's residual clause that the State contends are absent from California's second-degree felony-murder rule.

## IV

AEDPA's standard of review for a § 2254 habeas corpus petition is far more demanding than § 2244(b)'s requirements for authorization to file a second or successive § 2254 petition, and although Henry's habeas corpus claim may ultimately fail for any number of reasons, those issues are not presently before us. Because Henry has made a *prima facie* showing that his claim "relies on" the new and retroactively applicable rule of *Johnson*, we **GRANT** his motion to file a second or successive petition in the district court. We make no final or authoritative decision on the issues presented by the State of California, except to hold that Henry has presented a sufficient basis for us to authorize his filing of a second or successive habeas corpus petition.