**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

<table>
<tr><td>

TARYN CHRISTIAN,

<em>Applicant</em>,

v.

TODD THOMAS,

<em>Respondent.</em>

</td><td>

No. 19-70036

OPINION

</td></tr>
</table>

Application to File Second or Successive
Petition Under 28 U.S.C. § 2254

Argued and Submitted October 19, 2020
Honolulu, Hawaii

Filed December 14, 2020

Before:  J. Clifford Wallace, Carlos T. Bea, and
Mark J. Bennett, Circuit Judges.

Opinion by Judge Bea

# SUMMARY[*]

## Habeas Corpus

The panel denied Taryn Christian's application for federal habeas corpus relief from his 1997 conviction in Hawaii state court for second-degree murder in a case in which Christian seeks retroactive relief based on *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), which held that a defendant's Sixth Amendment rights are violated if, counter to the defendant's express objections, the defendant's counsel concedes guilt.

Christian filed in the district court a motion pursuant to Fed. R. Civ. P. 60(d) seeking relief from his first habeas judgment. The district court construed the motion as an application to file a second or successive (SOS) habeas petition and referred it to the Ninth Circuit.

The panel accepted the referral and confirmed that the Rule 60(d) filing, which asserted a federal basis for relief from Christian's state conviction, is properly construed as an application for authorization to file an SOS habeas petition.

The panel held that the application does not make the prima facie showing required in 28 U.S.C. § 2244(b)(2) for authorization to file an SOS petition. The panel assumed without deciding that *McCoy* created a new rule of constitutional law and that it was previously unavailable to Christian, but found that the application was otherwise

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

deficient. The panel held that the Supreme Court has not made *McCoy* retroactive on collateral review. The panel also held that because counsel does not violate a defendant's Sixth Amendment rights under *McCoy* simply by arguing self-defense in the alternative, Christian does not show that his proposed petition would rely on *McCoy*'s rule.

## COUNSEL

Gary Modafferi (argued), Law Office of Gary A. Modafferi LLC, Las Vegas, Nevada, for Applicant.

Richard B. Rost (argued), Deputy Prosecuting Attorney; Donald S. Guzman, Prosecuting Attorney; Department of the Prosecuting Attorney, Wailuku, Maui, Hawaii; for Respondent.

## OPINION

BEA, Circuit Judge:

Taryn Christian applies for federal habeas corpus relief from his 1997 conviction in Hawaii state court for second-degree murder. Having already been denied federal habeas relief once, he now seeks retroactive relief based on the Supreme Court's 2018 decision in *McCoy v. Louisiana*, 138 S. Ct. 1500. The Supreme Court held in *McCoy* that a defendant's Sixth Amendment right to determine the objective of his defense is violated if counsel, counter to the defendant's express instructions to maintain innocence, instead concedes guilt. Christian now argues his trial counsel effectively conceded his guilt by urging that the jury

consider self-defense as an alternative theory for acquittal against Christian's wishes.

In this proceeding, he initially filed a motion in the district court pursuant to Federal Rule of Civil Procedure 60 seeking relief from his first habeas judgment. The district court construed the filing as an application to file a second or successive petition for writ of habeas corpus ("SOS petition application") and referred it to the Ninth Circuit. We review whether Christian's filing is indeed an SOS petition application and, if so, whether, pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), he is entitled to file a second or successive habeas petition at the district court based on *McCoy*.

## I

## A

In 1997, a jury in Hawaii state court found Christian guilty of second-degree murder of Vilmar Cabaccang.[1] The night of the murder, Cabaccang awoke to find an intruder inside his car parked outside his home. After confronting and chasing the fleeing intruder, Cabaccang caught and fought the knife-wielding stranger. Cabaccang's then-girlfriend aided in fending off the intruder, but Cabaccang had already been stabbed by that time. He would later die

---

[1] Christian was also convicted of attempted third-degree murder, attempted third-degree theft, and use of a deadly or dangerous weapon in the commission of a crime.

from the wound. The state identified Christian and prosecuted him for Cabaccang's murder.[2]

At trial, Christian maintained his innocence throughout, insisting that his counsel argue that a third man was the true perpetrator. Christian attached a letter from his trial counsel to the instant petition, which memorialized their pretrial strategy discussion. His trial counsel, Anthony Ranken, stated in the letter that he recommended Christian "not contest identification and instead [go] with a self defense theory." Dkt. 2 at 69. Rankin's letter states Christian rejected his recommendation, and that Christian "decided that [he] still do[es] wish to contest identification." *Id.* Ranken also specified in the letter: "I cannot admit identification without your consent" and that "[w]e will contest all aspects of the prosecution's case for which we have any contrary evidence at all." *Id.* at 69–70. The letter does not state that Christian told Ranken not to argue self-defense. Rather, Ranken wrote that he believed he "must not entirely foreclose the option of arguing a self-defense theory" and suggested he may so argue after reviewing the evidence presented at trial. *Id.* Christian did not sign the letter.

At trial, Ranken did contest identification per his and Christian's strategy discussion by presenting evidence and

---

[2] The state based its case against Christian on the following evidence: Christian's ex-girlfriend's statement that he had confessed the crime to her; a call between those two featuring incriminating statements from Christian; Christian's hat that was found at the scene of the crime, alongside gloves matching the type used by Christian's employer; Christian's history of theft of car radios and Christian's identification of Cabaccang's car in his notebook as a target; and two photo identifications of Christian by Cabaccang's ex-girlfriend and another witness at the scene.

examining witnesses. During Ranken's closing arguments, after summarizing the defense's primary theory of the case, Ranken first presented to the jury his own theory of self-defense. Ranken argued that if Christian was the one who stabbed Cabaccang, then the evidence suggests he did so in self-defense and that Christian lacked the mental state required for a second-degree murder conviction. Ranken prefaced his statements regarding self-defense by stating:

> I'm going to assume now for the sake of argument that [Christian] was the one who inflicted these wounds despite everything I said because I have to go on and help you analyze the other portions of the case, the other possible defenses just in case you do get beyond that question that you don't find a reasonable doubt as to who did it and want to move on to the next step.

Trial Tr., Dkt. 2 at 97. Later, when Ranken discussed how Cabaccang was stabbed, he stated: "The way [Cabaccang] got stabbed is obviously [Christian] from that position, if [Christian] was the one who did it . . . ." *Id.* at 111. Moments later, he repeated again: "If [Christian] was ever facing [Cabaccang] – if [Christian] was ever facing [Cabaccang] . . . ." *Id.* at 112. Ranken then moved on from self-defense to argue Christian lacked the requisite state-of-mind, prefacing this argument by stating: "Again if this was [Christian] who did it, what was his state of mind at the time?" *Id.* at 121.

Ultimately, Christian was convicted of the charges against him, including second-degree murder, for which he is serving a life sentence. Christian unsuccessfully appealed his conviction to the Hawaii Supreme Court.

**B**

In 2004, Christian filed his first petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, arguing, *inter alia*, ineffective assistance of counsel. Christian questioned multiple decisions made by Ranken during closing arguments, including Ranken's decision to argue self-defense in the alternative against his wishes. The magistrate judge recommended denying this basis for relief, finding Ranken's decision to argue self-defense in the alternative was an objectively reasonable strategy under the circumstances. The district court judge adopted the magistrate judge's findings and recommendation. The district court granted Christian's first habeas petition on other grounds; however we reversed on appeal and denied the petition in its entirety without remand. *Christian v. Frank*, 595 F.3d 1076, 1078 (9th Cir. 2010).

In the meantime, Christian has repeatedly sought post-habeas relief. In 2011, Christian attempted to reopen his federal habeas proceeding by filing a Federal Rule of Civil Procedure 60(b) motion in the district court, alleging newly discovered evidence of fraud on the courts. The district court construed the motion as an SOS petition application and referred it to the Ninth Circuit, which denied the application. Christian filed another Rule 60(b) motion in 2013, again alleging newly discovered evidence of fraud. The district court this time did not construe the motion as an SOS petition application. Instead, the district court held an evidentiary hearing, but ultimately entered an order denying the motion in 2015. In 2016, Christian filed a motion to reconsider the 2015 order, which was denied. Christian filed a second motion for reconsideration, which the district court denied stating it would refuse to consider any more motions. Christian then filed a third motion to reconsider, a petition

for writ of mandamus in the Ninth Circuit, a third Rule 60 motion, a second petition for writ of mandamus, and multiple requests for certificates of appealability at the Ninth Circuit; all were denied.

On October 19, 2018, Christian filed the instant action, styled "Petitioner's Independent Action for Equitable Relief from Judgment Under Federal Rule 60(d)(1) Pursuant to Intervening Supreme Court Precedent in *McCoy v. Louisianna*, [sic] (2018)." The district court determined Christian's fourth Rule 60 filing was instead a disguised SOS petition application. The court found that the petition presented "a federal basis for relief from his underlying conviction," and was thus "a successive habeas petition," and referred it to the Ninth Circuit.[3]

## II

We have jurisdiction over applications for authorization to file second or successive habeas corpus petitions pursuant to 28 U.S.C. § 2244. Our role in determining whether to authorize a second or successive habeas petition under AEDPA is limited. We assess only whether a petitioner has made a prima facie showing of a qualifying claim. 28 U.S.C. § 2244(b)(2), (b)(3)(C); *Henry v. Spearman*, 899 F.3d 703,

---

[3] In January 2019, before this court, Christian filed a motion to hold in abeyance the proceedings before the panel pending appeal of a separate district court order denying Christian's motion for entry of findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(b). Dkt. 3. The Ninth Circuit has since denied Christian a certificate of appealability of that order (although Christian currently seeks certiorari review in the Supreme Court). *Christian v. Frank*, No. 19-15179 (9th Cir. Nov. 8, 2019). We **DENY** Christian's motion. Also pending are two motions for judicial notice, which we also **DENY** as moot. Dkts. 7, 24.

705 (9th Cir. 2018). Prima facie means "simply a sufficient showing of *possible* merit to warrant a fuller exploration by the district court." *Cooper v. Woodford*, 358 F.3d 1117, 1119 (9th Cir. 2004) (en banc) (citations omitted).

## III

"AEDPA imposes significant limitations on the power of federal courts to award relief to prisoners who file second or successive habeas petitions." *Ezell v. United States*, 778 F.3d 762, 765 (9th Cir. 2015) (citations omitted). Prior to filing an SOS petition with the district court, the petitioner must first obtain authorization to do so from the court of appeals. 28 U.S.C. § 2244(b)(3). In this gatekeeper role, we must deny authorization to any second or successive petition for habeas corpus unless it meets AEDPA's strict requirements. 28 U.S.C. § 2244(b)(1)–(3).

## A

The threshold issue is whether Christian's referred SOS petition application is properly before us. Christian filed this action with the district court as an independent action for equitable relief from its prior habeas judgment pursuant to Federal Rule of Civil Procedure 60(d). Rule 60 provides procedures for a traditional motion for relief from a judgment or order. Yet Rule 60(d) makes clear that it "does not limit a court's power to . . . entertain an independent action to relieve a party from a judgment, order, or proceeding" or "set aside a judgment for fraud on the court." The district court construed Christian's filing as an

unauthorized SOS petition application and referred it to us for review pursuant to Circuit Rule 22-3(a).**[4]**

A person may not disguise a second or successive habeas petition by styling it as a Rule 60 motion to avoid AEDPA's filing restrictions. "A habeas petitioner's filing that seeks vindication of [a federal basis for relief from a state court's judgment of conviction] is, if not in substance a habeas corpus application, at least similar enough that failing to subject it to the same requirements would be inconsistent with [AEDPA]." *Gonzalez v. Crosby*, 545 U.S. 524, 531 (2005) (quotation marks and citation omitted).

Determining whether a Rule 60 filing is instead an application for habeas relief depends on whether it "contains one or more 'claims.'" *Id.* at 530. "[A] 'claim' as used in § 2244(b) is an asserted federal basis for relief from a state court's judgment of conviction." *Id.* "In most cases, determining whether a Rule 60(b) motion advances one or more 'claims' will be relatively simple. A motion that seeks to add a new ground for relief will of course qualify."**[5]** *Id.*

---

**[4]** Circuit Rule 22-3(a) states: "If an application for authorization to file a second or successive section 2254 petition or section 2255 motion is mistakenly submitted to the district court, the district court shall refer it to the court of appeals."

**[5]** We analyze whether a filing advances an unauthorized claim under AEDPA using this same standard regardless of whether the original filing is a Rule 60(b) motion or, as here, a Rule 60(d) independent action. *See Kostich v. McCollum*, No. 16-5007, 647 F. App'x 887, 890 (10th Cir. May 20, 2016) (unpublished) ("Motions brought under Rule 60(d) . . . are subject to the same analysis as other motions to determine if they bring unauthorized second or successive habeas claims."); *Gonzalez v. Sec'y for Dep't of Corr.*, 366 F.3d 1253, 1277 n.11 (11th Cir. 2004) (en banc) ("[A] petitioner [may not] circumvent the restrictions on second or

at 532 (citations omitted). "When a movant asserts one of those grounds (or asserts that a previous ruling regarding one of those grounds was in error) he is making a habeas corpus claim." *Id.* at 532 n.4. In contrast, for example, "a bona fide Rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Hall v. Haws*, 861 F.3d 977, 985 (9th Cir. 2017) (quoting *Crosby*, 545 U.S. at 532).

Here, Christian does not urge a defect in the integrity of his earlier federal habeas proceeding. Rather, he presents a new claim for relief based on an intervening Supreme Court case, *McCoy*. Thus, his filing was properly construed by the district court as an SOS petition application. Christian claims the district court's denial of his Sixth Amendment claim in his original habeas petition was due to the court's "clear[] misunderst[anding]" of the "Constitutional significance" of the protected right discussed in *McCoy*. Pet'r's Br., Dkt. 2 at 29. He argues that "[i]n denying Petitioner's Sixth Amendment claim, the District Court applied a very narrow reading of *Strickland* to justify Ranken's complete reversal of Petitioner's defense in his closing summation." *Id.* at 32. In essence, Christian complains that the district court's interpretation of the substantive law governing his ineffective assistance of counsel claim was wrong in light of *McCoy*. In so doing, Christian asserts the district court's ruling on the merits of his original habeas petition was in error. Thus, under *Gonzalez v. Crosby*, Christian makes a claim covered under

---

successive petitions by the simple expedient of filing an independent action aimed at the judgment denying habeas relief.").

Section 2254. We therefore construe the Rule 60(d) action as a habeas petition subject to the restrictions of AEDPA.

So construed, Christian's petition before the panel is challenging the same judgment (his conviction for second-degree murder) as his original habeas petition, but on a new basis. A petition that challenges the same judgment as a prior habeas petition is considered second or successive. *See* 28 U.S.C. § 2244; *Gonzalez v. Sherman*, 873 F.3d 763, 767 (9th Cir. 2017). Christian concedes he had previously filed a habeas petition challenging the same conviction he challenges here and that it was denied. Pet'r's Br., Dkt. 2 at 19–20. Therefore, the habeas petition before the panel is second or successive under Section 2244.[6]

We accept the district court's referral of Christian's Rule 60(d) action and confirm that the filing is properly construed as an application for authorization to file a second or successive petition for writ of habeas corpus. We move now to the merits of the application.

**B**

We may authorize the filing of an SOS petition only if the petitioner makes a prima facie showing that satisfies the requirements of either 28 U.S.C. § 2244(b)(2)(A) or

---

[6] Christian argues that his filing falls under an exception to the second or successive rule outlined in *Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998). *Stewart* held that a petitioner may bring a second habeas action without falling under the requirements of Section 2244 if the claim forwarded by the second petition was also originally brought in the first petition, but was dismissed at that time for being unripe. *Id.* at 643–44. This exception does not apply here. Christian does not forward a newly ripened claim denied at his original habeas proceeding, but seeks relief based on a new rule of constitutional law recognized by the Supreme Court in *McCoy*.

(b)(2)(B).  28 U.S.C. § 2244(b)(3)(C).  As is relevant here, Christian must make a prima facie showing that his proposed petition "[1] relies on [2] a new rule of constitutional law, [3] made retroactive to cases on collateral review by the Supreme Court, [4] that was previously unavailable." *Spearman*, 899 F.3d at 705 (quoting 28 U.S.C. § 2244(b)(2)(A)).

Christian argues that the rule announced by the Supreme Court in *McCoy v. Louisiana* is one such new rule and his rights under *McCoy* were violated at trial such that he should be afforded retroactive habeas relief.  We review Christian's application to determine whether he has met these four AEDPA requirements.  For purposes of this analysis, we assume without deciding that *McCoy* did indeed create a new rule of constitutional law and that it was previously unavailable to Christian.[7]  However, we find Christian's application otherwise deficient.

1

In 2018, the Supreme Court decided *McCoy v. Louisiana*, holding that a defendant's Sixth Amendment rights are violated if, counter to express objections, the defendant's counsel concedes guilt.  138 S. Ct. at 1512.

McCoy was charged with triple homicide in the first degree.  *Id.* at 1506–07.  The state sought the death penalty based on "strong," even "overwhelming," evidence against

---

[7] We will observe, however, that we have previously held that a counsel's concession of guilt could be grounds for a claim of ineffective assistance of counsel, and that this argument, at least,  was available to Christian during his first habeas proceedings.  *See United States v. Swanson*, 943 F.2d 1070, 1074 (9th Cir. 1991).

McCoy. *Id.* at 1506, 1512. Despite the evidence arrayed against him, McCoy insisted on his innocence. *Id.* at 1506.

McCoy's counsel, skeptical of his client's alibi and believing the evidence in favor of conviction to be insurmountable, determined that the best strategy for McCoy was to concede guilt at the trial stage in hopes of building credibility with the jury to avoid the death penalty at the sentencing stage. *Id.* at 1510. Yet McCoy was "intransigent and unambiguous" in expressly objecting to his counsel's proposed strategy. *Id.* at 1507. McCoy "vociferously insisted" he was innocent and "adamantly objected to any admission of guilt." *Id.* at 1505.

McCoy's counsel ignored his client's instructions. At trial, he was unambiguous in conceding guilt before the jury, stating "my client committed three murders" and that he "took [the] burden off of [the prosecutor]." *Id.* at 1507 (alterations in original). McCoy's counsel did not couch, equivocate, or preface these statements with assurances that he was arguing only in the alternative. In so doing, his express objective was not to obtain acquittal, but to lessen the severity of the penalty. *Id.* at 1510 (observing that McCoy's counsel's "express motivation for conceding guilt was . . . to try to build credibility with the jury, and thus obtain a sentence lesser than death.").

On direct review from the Louisiana Supreme Court, the U.S. Supreme Court reversed McCoy's conviction on the ground that his counsel violated his Sixth Amendment rights, namely the "[a]utonomy to decide that the objective

of the defense is to assert innocence."**[8]**  *Id.* at 1508.  The Court held that counsel could not "override" and "interfere" with a defendant's decision to maintain innocence, provided that the client gave "express statements of [his] will" to do so prior to trial.  *Id.* at 1509. Counsel is nonetheless permitted to "focus his own collaboration on urging" alternative theories, such as arguing that the defendant's "mental state weighed against conviction." *Id.*

The Court elaborated on the proper division of labor between counsel and client: "With individual liberty—and, in capital cases, life—at stake, it is the defendant's prerogative, not counsel's, to decide on the objective of his defense: to admit guilt in the hope of gaining mercy at the sentencing stage, or to maintain his innocence, leaving it to the State to prove his guilt beyond a reasonable doubt." **[9]** *Id.* at 1505.  With that said, the defendant's right to maintain innocence "should not displace counsel's . . . trial management role[]." *Id.* at 1509.  Counsel is permitted to determine "what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence," *id.* at 1508 (citations omitted), along with "choosing the basic line of defense, moving to suppress evidence, delivering an opening statement and deciding what to say in the opening, objecting to the admission of evidence, cross-examining witnesses, offering evidence and calling defense witnesses, and deciding what to say in summation," *id.* at 1516 (Alito, J.,

---

**[8]** The Supreme Court relied on the Assistance of Counsel Clause: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.

**[9]** The client is also entitled to decide "whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal." *McCoy*, 138 S. Ct. at 1508.

dissenting) (citing *New York v. Hill*, 528 U.S. 110, 114–15 (2000)).

The Supreme Court clarified that deprivation of this constitutional right is a "structural error," and not one falling within the purview of the Court's "ineffective-assistance-of-counsel jurisprudence." *Id.* at 1510–11 (majority opinion). The Supreme Court did not express whether this rule would be retroactively applicable on collateral review.

2

Applications for leave to file SOS petitions pursuant to Section 2244(b)(2)(A) may not be authorized unless the intervening new constitutional rule has been "made retroactive to cases on collateral review by the Supreme Court." "[T]he Supreme Court is the only entity that can make a new rule retroactive." *Tyler v. Cain*, 533 U.S. 656, 663 (2001). "The Supreme Court can make a rule retroactive explicitly or through a combination of holdings that 'logically dictate' the new rule's retroactivity." *Young v. Pfeiffer*, 933 F.3d 1123, 1125 (9th Cir. 2019) (citations omitted).

The Supreme Court will not hold a new constitutional rule of criminal procedure to be retroactively applicable on collateral review unless it falls within two narrow exceptions. *Teague v. Lane*, 489 U.S. 288, 310 (1989). The first is for substantive rules that proscribe the criminalization of particular individual conduct. *Id.* at 307. The second

> is for watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding. To fall within this exception, a new rule must meet two requirements: Infringement of the rule

> must seriously diminish the likelihood of obtaining an accurate conviction, and the rule must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.

*Tyler*, 533 U.S. at 665 (quotation marks and citations omitted). Absent an explicit statement on retroactivity, "[t]he Court . . . can be said to have 'made' a rule retroactive within the meaning of § 2244(b)(2)(A) only where the Court's holdings logically permit no other conclusion than that the rule is retroactive." *Tyler*, 533 U.S. at 669 (O'Connor, J., concurring) ("*[I].e.*, the holdings must *dictate* the conclusion and not merely provide principles from which one *may* conclude that the rule applies retroactively.").

The Supreme Court has not explicitly made *McCoy* retroactive. *McCoy* was heard on direct appeal rather than collateral review, and the U.S. Supreme Court did not discuss retroactivity. *McCoy*, 138 S. Ct. at 1507. Nor has the Supreme Court in any subsequent decision held *McCoy* to be explicitly retroactive.

Neither is *McCoy*'s retroactivity logically dictated by a combination of holdings from multiple Supreme Court cases. Christian does not cite to any Supreme Court holdings that might lend themselves to that conclusion. He argues only that we should conclude that *McCoy*'s right to maintain innocence is a watershed rule of criminal procedure because its withholding, like the right to counsel, "vitiates the fairness of the conviction." Reply Br. 14–15 (citing *Mackey v. United States*, 401 U.S. 667, 693–94 (1971)). That may or may not be the case—that is for the Supreme Court to decide. We may consider only whether the Supreme Court

has yet done so, either explicitly or through two or more holdings that in combination perform a logical proof.

To prove retroactivity absent an explicit holding, "[t]he relationship between the conclusion that a new rule is retroactive and the holdings that make this rule retroactive . . . must be *strictly logical*." *Tyler*, 533 U.S. at 669 (O'Connor, J., concurring) (emphasis added). For example, in *McCoy*, the Supreme Court held that the denial of a defendant's Sixth Amendment right to maintain innocence is a "structural" error and held that overriding the client's decision as to the objective of the defense was a "[v]iolation of a defendant's Sixth Amendment-secured autonomy." *McCoy*, 138 S. Ct. at 1511. Such a rule could be *logically* retroactive if, for instance, the Supreme Court had previously held that "all newly discovered Sixth Amendment rights are retroactive," or if it had held that "all new rights whose deprivation result in structural errors are watershed rules of criminal procedure." The Supreme Court would not then have had to state explicitly that *McCoy* was retroactive: that conclusion would be logically inescapable based upon the interaction of either of those two premises with *McCoy*'s holding.

But Christian does not establish a strictly logical relationship between *McCoy* and another Supreme Court holding. He points to no case that necessarily dictates that all structural errors are coincident with *Teague*'s permitted category of retroactive rights. In fact, the Supreme Court has said otherwise: "[A] holding that a particular error is structural does not logically dictate the conclusion that the second *Teague* exception has been met." *Tyler*, 533 U.S. at 666–67. Neither does Christian cite to any Supreme Court case deeming all Sixth Amendment rights to be watershed rules of criminal procedure implicating the fundamental

fairness and accuracy of the criminal proceeding. As such, Christian fails to show that *McCoy* has logically been made retroactive. We therefore conclude that the Supreme Court has not made *McCoy v. Louisiana* retroactive to cases on collateral review.

3

Even if we were to hold that *McCoy* is retroactive, Christian's petition does not sufficiently rely on *McCoy* so as to present a prima facie case for relief.

"[Section] 2244(b) calls for a permissive and flexible, case-by-case approach to deciding whether a second or successive habeas corpus petition 'relies on' a qualifying new rule of constitutional law. We ask whether the rule substantiates the movant's claim, even if the rule does not conclusively decide the claim, or if the rule would need a non-frivolous extension for the petitioner to get relief." *Spearman*, 899 F.3d at 706 (9th Cir. 2018) (cleaned up).

For Christian's application to be substantiated by *McCoy*, he must show at the very least that his counsel conceded to his guilt at trial. Christian argues that Ranken, defying his instructions, changed strategy mid-trial to forward a theory of self-defense before the jury during closing arguments. According to Christian, Ranken's statements relating to the alternative self-defense argument ran so counter to the third-man argument pursued during trial as to have effectively conceded Christian's guilt. He asserts that this de-facto concession of guilt deprived him of his right under *McCoy* to maintain innocence. We do not agree.

Unlike McCoy's counsel, Ranken never conceded Christian's guilt. Ranken never relieved the prosecution of its burden. Indeed, throughout the trial, Ranken argued that

Christian was innocent and contested the state's identification of Christian as the one who stabbed Cabaccang.

Moreover, Ranken repeatedly and explicitly prefaced his self-defense argument as relevant only if the jury concluded that Christian had stabbed Cabaccang. Ranken's intention to argue in the alternative was clear as day: "I'm going to assume now for the sake of argument;" "just in case you do get beyond that question that you don't find a reasonable doubt as to who did it;" "if [Christian] was the one who did it." Trial Tr., Dkt. 2 at 97, 111. No reasonable member of the jury could view a self-defense argument couched in these terms as tantamount to a concession of guilt.

Additionally, *McCoy* makes clear that counsel does not interfere with the objective of the defense by arguing alternative theories if he does so in the pursuit of acquittal. *McCoy*, 138 S. Ct. at 1508–09 ("[Counsel] could not interfere with [a defendant's] telling the jury 'I was not the murderer,' although counsel could, if consistent with providing effective assistance, focus his own collaboration on urging that [a defendant's] mental state weighed against conviction."). While *McCoy* safeguards the client's authority to determine the "objective of the defense," the Supreme Court made sure to state that its holding did not displace counsel's trial management role, including in deciding "what arguments to pursue." *Id.* at 1508 (citations omitted).

Urging a jury to consider self-defense as an alternative argument does not amount to a concession of guilt. Ranken did not relieve the state of its burden to prove Christian's guilt beyond a reasonable doubt. Moreover, Ranken's objective in arguing self-defense was identical to Christian's: acquittal. His objective was not, as it was in

*McCoy*, to forsake acquittal in hopes of obtaining a lighter sentence.    We hold that counsel does not violate a defendant's Sixth Amendment rights under *McCoy* simply by arguing self-defense in the alternative.

## IV

Christian's Rule 60(d) filing before the district court asserted a federal basis for relief from his state conviction, and thus made a claim covered by 28 U.S.C. § 2244(b).  The filing was properly referred to us and we construe it as an application for authorization to file a second or successive petition for writ of habeas corpus.  Christian's application does not make the required prima facie showing pursuant to 28 U.S.C. § 2244(b)(2).  He does not show that *McCoy* was made retroactive on collateral review by the Supreme Court nor that his proposed petition would rely on *McCoy*'s rule.

**DENIED.**