In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 23-2240

CURTIS L. WALKER,

*Petitioner-Appellant,*

*v.*

DAN CROMWELL,

*Respondent-Appellee.*

———————————

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:22-cv-311-wmc — **William M. Conley**, *Judge.*

———————————

ARGUED SEPTEMBER 17, 2024 — DECIDED JUNE 16, 2025

———————————

Before EASTERBROOK, HAMILTON, and MALDONADO,
*Circuit Judges.*

HAMILTON, *Circuit Judge.* Curtis Walker has served 30
years of his life sentence for a murder that he committed when
he was 17 years old. The state trial judge in Walker's case ex-
ercised the discretion conferred upon him by Wisconsin law
to set Walker's parole eligibility date for 2071. Walker will not
be eligible for release until he is 95 years old.

Almost two decades after Walker was sentenced, the Supreme Court began deciding a series of cases involving juvenile offenders who were sentenced to life without parole. Relying on those decisions, Walker sought postconviction relief in the Wisconsin state courts. After the state courts denied relief, Walker filed a petition for federal habeas corpus relief under 28 U.S.C. § 2254 arguing that he is serving a de facto life-without-parole sentence that violates the Eighth Amendment. He requests a "meaningful opportunity" to demonstrate that he is no longer dangerous and that he is capable of reintegrating into the community. Given the deferential standard of review we apply under section 2254(d), we affirm the district court's denial of federal habeas relief. The Wisconsin Court of Appeals did not unreasonably apply the Supreme Court's case law, which offers mixed signals on cases like Walker's, where a juvenile homicide offender is sentenced to life without parole as a matter of judicial judgment and discretion.

I.  *Factual and Procedural Background*

   A.  *Walker's Crime and Punishment*

In 1994, Curtis Walker and an accomplice shot and killed Milwaukee police officer William Robertson, an officer they selected at random for murder. Walker was 17 years old at the time of the crime. He was tried as an adult in a Wisconsin state court and was convicted of first-degree intentional homicide while using a dangerous weapon, as a party to the crime. During Walker's sentencing hearing, the judge considered Walker's difficult childhood and capacity for rehabilitation before concluding that a lengthy prison sentence was warranted. The judge sentenced Walker to life in prison with a parole eligibility date of 2071. Walker unsuccessfully

appealed his conviction, and the Wisconsin Supreme Court denied review in February 2001.

B.  *Intervening Decisions on Juvenile Life Without Parole*

That would have been the end of Walker's legal story if not for a series of intervening Supreme Court cases involving juvenile offenders who were sentenced to terms of life in prison without parole. First, in *Graham v. Florida*, 560 U.S. 48, 74 (2010), the Court held that the Eighth Amendment prohibits a State from sentencing juvenile offenders who did not commit homicide to life without parole. It required a State to give juvenile offenders convicted of non-homicide crimes "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* at 75. Then, in *Miller v. Alabama*, 567 U.S. 460, 479 (2012), the Court held that the Eighth Amendment forbids mandatory life without parole for all juvenile offenders, including those convicted of murder.

*Graham* and *Miller* were both grounded in the observation that "children are constitutionally different from adults for purposes of sentencing." *Id.* at 471; *Graham*, 560 U.S. at 68 (similar). Because children are categorically less culpable than adults and life without parole is a particularly harsh punishment for juvenile offenders, see *Miller*, 567 U.S. at 477; *Graham*, 560 U.S. at 68–71, the Court imposed safeguards (a categorical prohibition for non-homicide offenders and an individualized sentencing process for homicide offenders) that had previously been confined to the context of capital punishment.

As significant as *Graham* and *Miller* were, however, neither decision appeared to affect the validity of Walker's sentence since he had been convicted of homicide and sentenced under Wisconsin's discretionary sentencing scheme. That changed

when the Court decided *Montgomery v. Louisiana*, 577 U.S. 190 (2016). In *Montgomery*, the Court wrote that *Miller* had adopted a substantive rule of constitutional law that would apply retroactively on collateral review, such as habeas petitions. *Id.* at 212. *Montgomery* required States to give any juvenile offender sentenced to mandatory life without parole an "opportunity for release" in the form of the chance to be considered for parole. *Id.*

Although *Miller* had addressed only mandatory sentencing schemes, *Montgomery* was written so that its rationale for holding *Miller* retroactive could apply to all juvenile homicide offenders sentenced to life without parole, whether as a mandatory sentence or not. According to *Montgomery*, *Miller* contained a "substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity." 577 U.S. at 210. "Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects 'unfortunate yet transient immaturity.'" *Id.* at 208 (internal quotation marks omitted), quoting *Miller*, 567 U.S. at 479.

C. *State Postconviction Proceedings and Jones v. Mississippi*

Just three months after the Supreme Court decided *Montgomery*, Walker sought resentencing in a postconviction motion in the state trial court. The trial court denied Walker's motion on the ground that he was not serving a sentence without possibility for parole triggering the protections of *Miller* and *Montgomery*. Walker appealed to the Wisconsin Court of Appeals in 2016. Due to two developments outside of his control, Walker did not receive a decision in his appeal until January 2022.

First, the Court of Appeals held Walker's case in abeyance pending the Wisconsin Supreme Court's decision in a different postconviction case presenting the issue whether *Miller* and *Montgomery* apply to de facto life-without-parole sentences. The Wisconsin Supreme Court then held that case in abeyance after the Supreme Court granted certiorari in *Jones v. Mississippi*, 593 U.S. 98 (2021), another case involving a juvenile sentenced to life without parole. Like Walker, but unlike the petitioners in *Miller* and *Montgomery*, the *Jones* petitioner was sentenced to life without parole under a discretionary sentencing law. *Id.* at 100–01.

*Jones* addressed the scope of *Miller* and *Montgomery* and, in particular, whether "a sentencer who imposes a life-with-out-parole sentence must *also* make a separate factual finding that the defendant is permanently incorrigible, or at least provide an on-the-record sentencing explanation with an implicit finding that the defendant is permanently incorrigible." *Id.* at 101. The Court held in *Jones* that a sentencing judge need not make an explicit or implicit factual finding that a juvenile homicide offender is permanently incorrigible before imposing life without parole. *Id.*

After *Jones*, the Wisconsin Court of Appeals finally addressed Walker's appeal and affirmed the trial court's denial of postconviction relief. But instead of adopting the trial court's reasoning, the appellate court resolved Walker's claim under *Jones*. The appellate court assumed that Walker's sentence amounted to life without parole as a practical matter. The court held, however, that the sentence did not violate the Eighth Amendment because the sentencing judge had considered Walker's "youth and its attendant circumstances as a mitigating factor" before imposing life without parole. The

Wisconsin Supreme Court then denied Walker's petition for review.

D. *Federal Habeas Proceedings*

Having exhausted his state-court remedies, Walker filed a petition for federal habeas review in the Western District of Wisconsin. He asserted that his sentencing judge "acknowledged, on the record, that he believed [him] to be capable of reform," and according to Walker, therefore could not constitutionally sentence him to de facto life without parole, which precludes "the possibility of any meaningful opportunity for parole or release." He also asserted that his claim was timely because it was based on the Supreme Court's decisions in *Miller* and *Montgomery*.

The district court dismissed Walker's petition under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. It gave two independent reasons for dismissal. First, the court held that Walker's habeas petition was untimely under the Antiterrorism and Effective Death Penalty Act's (AEDPA) one-year limitations period. 28 U.S.C. § 2244(d)(1). AEDPA's limitations period is measured from the latest of four events described in the statute. The relevant event for Walker's petition is "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." § 2244(d)(1)(C).

The district court concluded that the one-year limitations period for Walker's claim began on June 25, 2012, the day *Miller* was decided. "Unfortunately, if understandably," Walker did not file his motion for postconviction relief in state

court until after the Supreme Court decided *Montgomery* four years later. On that reasoning, his motion was late by nearly three years. The court also held that Walker could not meet his burden of showing on the merits that he was entitled to federal habeas relief. The district court concluded that, although "the sentencing judge found Walker to be *capable* of reform," the Wisconsin Court of Appeals did not unreasonably apply federal law in determining that Walker's individualized sentencing process satisfied the Eighth Amendment. Noting the "particularly harsh result" of denying relief in Walker's case, the district court granted him a certificate of appealability.

Walker appealed, and we concluded that his appeal would benefit from counseled briefing and oral argument. We recruited counsel to brief the timeliness and merits of Walker's Eighth Amendment claim under AEDPA.[1]

II. *Timeliness of Walker's Petition*

After considering both parties' arguments on the timeliness of Walker's habeas petition, we decline to decide his petition on timeliness grounds. Walker argues—and Wisconsin does not dispute—that the district court erred by finding his petition untimely without giving either party notice or an opportunity to present arguments. We agree. The Supreme Court has held that district courts may consider sua sponte the timeliness of a habeas petition but only after giving both parties "fair notice and an opportunity to present their positions." *Day v. McDonough*, 547 U.S. 198, 210 & n.11 (2006) ("A

---

[1] Attorneys Jeffrey R. Johnson, S. Matthew Krsacok, Nicholas A. Campbell, Riley W. Walters, and the law firm of Jones Day have the thanks of this court for their able representation and assistance to the court.

district court's discretion is confined within these limits."). Although *Day* involved a habeas petition that had survived the initial screening stage, it is equally applicable to petitions dismissed under Rule 4. See *id.* at 207 & n.6 (courts are "never (or, at least, hardly ever) … positioned to raise AEDPA's time bar *sua sponte*" at Rule 4 stage); *Shelton v. United States*, 800 F.3d 292, 294–95 (6th Cir. 2015) (applying *Day*'s due process requirements at the Rule 4 screening stage; vacating judgment and remanding for further proceedings); *Wentzell v. Neven*, 674 F.3d 1124, 1126, 1128 (9th Cir. 2012) (same; reversing judgment and remanding for further proceedings).

On appeal, both sides have briefed the timeliness issue. But because the district court found Walker's petition untimely without notifying him, Walker never had the chance to argue that an exception to the statute of limitations applies. The existing record is insufficient to assess whether he has a viable argument for equitable tolling, so affirming the district court's dismissal on timeliness grounds would be premature. See *In re Rosado*, 7 F.4th 152, 157 (7th Cir. 2021) ("Tolling decisions are often hard and fact bound, best left to district courts in the first instance."); *Arreola-Castillo v. United States*, 889 F.3d 378, 383–84 (7th Cir. 2018) (declining to consider sua sponte the government's forfeited timeliness argument where the petitioner "might have submitted additional evidence" if the issue had been raised in district court).

We also think it is more prudent to resolve Walker's habeas petition on the merits of his Eighth Amendment claim under AEDPA because the timeliness and the merits issues are tangled up together. In *Cross v. United States*, we cautioned against "improperly read[ing] a merits analysis into the limitations period." 892 F.3d 288, 293 (7th Cir. 2018). In Walker's

case, though, we do not see any way to disentangle the timeliness of his petition from the merits of his claim. The limitations period for Walker's habeas petition began to run on the date that the Court announced his asserted right. 28 U.S.C. § 2244(d)(1)(C); *Dodd v. United States*, 545 U.S. 353, 357 (2005); *Johnson v. Robert*, 431 F.3d 992, 992 (7th Cir. 2005). Walker's claim is timely only if *Montgomery*, rather than *Miller*, announced his asserted right.[2]

We cannot decide when the Supreme Court announced Walker's asserted right without determining the scope of both *Miller* and *Montgomery*—the issue at the core of Walker's Eighth Amendment claim—and as shown below, that is not an easy task. We think it is best to undertake that analysis under section 2254's "contrary to" or "unreasonable application" standard for the merits rather than opining on the constitutional issue as part of the timeliness inquiry.

III. *Walker's Eighth Amendment Claim*

　A. *The AEDPA Standard of Review*

We review de novo the district court's denial of habeas relief. *Rhodes v. Dittmann*, 903 F.3d 646, 655 (7th Cir. 2018). Because the Wisconsin Court of Appeals rejected Walker's Eighth Amendment claim on the merits, the deferential

---

[2] *Dodd* held that the one-year limitations period in 28 U.S.C. § 2255 begins to run on the date that the Court announces a new right, not the date that the Court makes the right retroactive. 545 U.S. 353, 357 (2005). While *Dodd* involved a section 2255 habeas claim, we have extended its holding to the materially identical language in section 2244(d)(1)(C). *Johnson v. Robert*, 431 F.3d 992, 992 (7th Cir. 2005). The district court granted a certificate of appealability based in part on the possibility that we would reconsider our holding in *Johnson* that *Dodd*'s rationale applies to state prisoners. We see no reason to reconsider *Johnson* at this time.

standards of 28 U.S.C. § 2254(d) govern our review. *Id.* Walker does not challenge the state courts' fact-finding, so he cannot win a writ of habeas corpus unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Walker seeks relief under both prongs of section 2254(d)(1). A state court's decision is "contrary to" clearly established law "if it either applies a rule that contradicts a prior Supreme Court case, or if it reaches a different result than the Supreme Court has reached on a materially indistinguishable set of facts." *Hall v. Zenk*, 692 F.3d 793, 798 (7th Cir. 2012), citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (majority opinion of O'Connor, J.). A decision is an "unreasonable application" of clearly established law "'if the state court identifies the correct governing legal principle' but 'unreasonably applies that principle to the facts of the petitioner's case.'" *Rhodes*, 903 F.3d at 655, quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). The standard is intended to be difficult to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). A federal court may grant relief only if the state court's decision "was unreasonably wrong under an objective standard." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (en banc), citing *Williams*, 529 U.S. at 410–11 (majority opinion of O'Connor, J.).

To obtain relief under either prong of section 2254(d)(1), a petitioner must identify "clearly established federal law, as determined by the Supreme Court of the United States," that applies to his claim. Under AEDPA, clearly established federal law "refers to the holdings … of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Garcia v. Hepp*, 65 F.4th 945, 949 (7th Cir. 2023), quoting

*Williams*, 529 U.S. at 412 (majority opinion of O'Connor, J.). The lower federal courts have an independent obligation to determine for themselves the relevant "clearly established Federal law." *Andrew v. White*, 604 U.S. —, —, 145 S. Ct. 75, 82 (2025). Particularly relevant here, when we try to determine what constitutes clearly established law, we look beyond "the four corners of a rule announced in a single case. We consider all cases that 'provide a *body* of clearly established law' governing the issue." *Garcia*, 65 F.4th at 949, quoting *Sims v. Hyatte*, 914 F.3d 1078, 1089 (7th Cir. 2019).

B.  *Walker's Eighth Amendment Claim*

Walker and Wisconsin agree that Walker's claim is governed by *Miller v. Alabama*, 567 U.S. 460 (2012), *Montgomery v. Louisiana*, 577 U.S. 190 (2016), and *Jones v. Mississippi*, 593 U.S. 98 (2021). Although the Supreme Court has yet to extend *Miller*, *Montgomery*, and *Jones* to a sentence with the possibility of parole, the Wisconsin Court of Appeals assumed that Walker's sentence with parole eligibility coming first at age 95 is "a de facto life-without-parole sentence that implicates *Miller* and *Montgomery*." The state court read *Jones* to hold that the Eighth Amendment requires only an individualized sentencing process in a case involving a juvenile homicide offender sentenced to life without parole. It concluded that Walker's de facto life-without-parole sentence satisfies the Eighth Amendment because the sentencing judge considered his youth and had discretion to impose a less severe penalty. For purposes of this appeal, we will follow the state court's lead in treating Walker's sentence as de facto life without parole and thus subject to *Miller*, *Montgomery*, and *Jones*. Cf. *Wilson v. Neal*, 108 F.4th 938, 949–50 (7th Cir. 2024) (affirming denial of habeas relief where state courts held that

*Miller* did not apply to long term of years that arguably amounted to de facto life without parole).

Walker contends that *Montgomery*, not *Jones*, establishes the legal principle that governs his Eighth Amendment claim. His argument relies on *Montgomery*'s rationale for holding that *Miller* adopted a substantive rule retroactively applicable on collateral review. A new rule of constitutional law is substantive if it prohibits "a certain category of punishment for a class of defendants because of their status or offense." *Montgomery*, 577 U.S. at 198, first quoting *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989), and then citing *Teague v. Lane*, 489 U.S. 288, 307 (1989) (plurality opinion of O'Connor, J.). "Substantive rules, then, set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose." *Id.* at 201.

*Montgomery* explained that *Miller*'s rule is substantive because it "did more than require a sentencer to consider a juvenile offender's youth before imposing life without parole." *Id.* at 208. *Miller* "bar[red] life without parole … for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." *Id.* at 209. As a result, the Court declared in *Montgomery*, "all other children imprisoned under a disproportionate sentence have … suffered the deprivation of a substantive right." *Id.*

Walker reads this discussion to impose a categorical prohibition on sentencing corrigible juvenile offenders to life without parole. Applying that rule to the facts of his case, he argues that the judge who sentenced him affirmatively found that he was capable of change and therefore could not constitutionally sentence him to life without parole. In Walker's view, that affirmative finding distinguishes his case from

*Jones*, in which the petitioner's sentencer did not make a factual finding of corrigibility. He argues that the state court's decision was contrary to clearly established federal law insofar as it concluded that his case was governed by *Jones*, rather than by *Miller* and *Montgomery*, and an unreasonable application of federal law because it relied on an erroneously broad reading of *Jones*.

Walker has solid grounds for arguing that *Montgomery* established a substantive, categorical rule that life without parole is an unconstitutionally disproportionate penalty for juvenile offenders capable of change. *Montgomery* characterized that principle as a "substantive holding" and relied on it to hold that *Miller* adopted a substantive rule of constitutional law applicable on collateral review. 577 U.S. at 210. And the quoted language from *Montgomery* certainly points in the direction Walker argues.

Under the AEDPA, however, a state-court decision can withstand habeas review even when the petitioner presents a "strong case for relief." *Harrington*, 562 U.S. at 102. Relief is available only if the state court's decision is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. No such error occurred here because the Court's precedents, *when read together*, simply do not clearly establish such a categorical prohibition against sentencing corrigible juveniles to life without parole, at least when the sentencing judge has discretion not to impose so severe a sentence.

First, *Miller* expressly declared that it was *not* adopting a categorical prohibition on sentencing any subset of juvenile offenders to life without parole:

> Our decision does not categorically bar a pen-
> alty for a class of offenders or type of crime—as,
> for example, we did in *Roper* or *Graham*. Instead,
> it mandates only that a sentencer follow a cer-
> tain process—considering an offender's youth
> and attendant characteristics—before imposing
> a particular penalty.

567 U.S. at 483. Then, *Montgomery* seemed to contradict that quoted language in *Miller* when it held that *Miller* was retro-actively applicable precisely because it "did bar life without parole … for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." 577 U.S. at 209. Finally, *Jones* expressed a substantially narrower reading of both *Miller* and *Montgomery* that is in significant tension with *Montgomery*'s language, logic, and retroactivity holding.

Both *Montgomery* and *Jones* drew dissents arguing that the Court had effectively rewritten its prior decisions. *Montgomery*, 577 U.S. at 225 (Scalia, J., dissenting) ("It is plain as day that the majority is not applying *Miller*, but rewriting it."); *Jones*, 593 U.S. at 143 (Sotomayor, J., dissenting) ("Instead of addressing [the traditional stare decisis] factors, the Court simply rewrites *Miller* and *Montgomery* to say what the Court now wishes they had said, and then denies that it has done any such thing."); see also *Jones*, 593 U.S. at 127 (Thomas, J., concurring in the judgment) (majority opinion "[o]verrule[d] *Montgomery* in substance but not in name").

Where the Supreme Court's relevant precedents "have not been a model of clarity," the Court teaches lower federal courts to be cautious about what its case law has "clearly established" for purposes of section 2254(d). See *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) (reversing grant of relief where

Eighth Amendment principle of "gross disproportionality" was not defined by precise contours and applied only in "exceedingly rare" and "extreme" cases). "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the] Court is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003). With respect, we believe the shifting rationales of *Miller*, *Montgomery*, and *Jones* have left unsettled whether the Eighth Amendment categorically forbids life without parole for corrigible juvenile homicide offenders. We explain next why *Montgomery* is itself ambiguous about whether it adopted such a categorical rule. Then we explain why *Jones* confirms that reasonable jurists could disagree about the scope of *Montgomery*.

1. *Discerning Montgomery's Reach*

*Montgomery* would have been an unusual vehicle for the Court to take the significant step of adopting a categorical prohibition on sentencing corrigible juvenile homicide offenders to life without parole. The case set out to answer a narrow question: whether *Miller* adopted a substantive rule retroactively applicable on collateral appeal. And while *Miller* clearly understood the distinction between corrigible and incorrigible youths to be important, see 567 U.S. at 479–80 (suggesting that only incorrigible juvenile offenders should be sentenced to life without parole), the *Miller* Court said it was not categorically prohibiting the State from sentencing any group of juvenile offenders to life without parole.

*Miller* limited its analysis to the constitutional problems with mandatory sentencing schemes. *Id.* at 474 ("But the mandatory penalty schemes at issue here prevent the sentencer from taking account of these central considerations."). *Miller*

drew on the Court's cases categorically prohibiting certain penalties for juvenile offenders for their discussion of children's "distinctive (and transitory) mental traits and environmental vulnerabilities," none of which are crime-specific. *Id.* at 472–74 (discussing *Roper v. Simmons*, 543 U.S. 551 (2005), and *Graham v. Florida*, 560 U.S. 48 (2010)). But the *Miller* Court took care to distinguish its holding from the categorical rules adopted in those cases, in language we quoted above:

> Our decision does not categorically bar a penalty for a class of offenders or type of crime—as, for example, we did in *Roper* or *Graham*. Instead, it mandates only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing a particular penalty.

*Id.* at 483. And because *Miller*'s holding requiring individualized sentencing procedures was "sufficient to decide" the cases before it, the Court expressly declined to consider the petitioners' alternative argument "that the Eighth Amendment requires a categorical bar on life without parole for juveniles." *Id.* at 479.

Although we cannot ignore the breadth of *Montgomery*'s reasoning, we also have to read it in the context of the narrow question and specific facts presented in *Montgomery*. When the Court determines whether a constitutional rule applies retroactively, its retroactivity analysis does not ordinarily change the scope of the constitutional rule at issue. A categorical prohibition would have affected the validity of discretionary life-without-parole sentences in addition to the mandatory sentences invalidated by *Miller*. See *Montgomery*, 577 U.S. at 202 ("Nor could the use of flawless sentencing

procedures legitimate a punishment where the Constitution immunizes the defendant from the sentence imposed.").

But to decide the case before it in *Montgomery*, the Court did not need to extend *Miller* beyond mandatory sentencing schemes. The *Montgomery* petitioner was sentenced to life without parole under a mandatory sentencing scheme and therefore fell within the rule established by *Miller*. *Id.* at 194. With that context in mind, a reasonable jurist could conclude that *Montgomery*'s retroactivity analysis did not go any further than making *Miller*'s prohibition on mandatory life without parole retroactively applicable. See, e.g., *United States v. Grant*, 9 F.4th 186, 196 (3d Cir. 2021) (en banc) ("any language in *Montgomery* pertaining to discretionary LWOP sentencing regimes is not binding").

Two other features of *Montgomery* reinforce that conclusion. First, despite *Montgomery*'s broad statements about what *Miller* and the Eighth Amendment prohibit, it did not engage in the mode of analysis that the Court usually employs when it considers whether to adopt a categorical substantive rule. In its Eighth Amendment cases adopting categorical rules, the Court first considers "'objective indicia of society's standards, as expressed in legislative enactments and state practice,' to determine whether there is a national consensus against the sentencing practice at issue." *Graham*, 560 U.S. at 61 (applying that approach to life without parole for juvenile offenders who did not commit homicide), quoting *Roper*, 543 U.S. at 563. If *Montgomery* had adopted a categorical rule, we would expect it to have considered state sentencing practices or at least to have acknowledged that it was departing from the Court's usual approach. But *Montgomery* never mentioned the "objective indicia of society's standards" inquiry. Regardless, the

sentencing practice at issue in *Montgomery* was *mandatory* life without parole for juvenile homicide offenders, 577 U.S. at 193–94, and *Miller*'s discussion was also limited to mandatory sentences, 567 U.S. at 482–87.

Further, *Montgomery*'s discussion of the practical consequences of its holding for the State and juvenile offenders conspicuously lacks any mention of discretionary life-without-parole sentences. *Montgomery* defined a "*Miller* violation" as a "case where a juvenile offender received mandatory life without parole." 577 U.S. at 212. It explained that "prisoners like Montgomery"—i.e., those sentenced to mandatory life without parole—"must be given the opportunity to show their crime did not reflect irreparable corruption." *Id.* at 213. *Montgomery* is silent on how the logic of its retroactivity analysis applies in a case involving a discretionary life-without-parole sentence.

In sum, the question presented in *Montgomery* was limited to the retroactivity of *Miller*'s prohibition on mandatory life without parole for juvenile homicide offenders. *Montgomery* did not employ the Court's ordinary approach to adopting categorical rules, and it framed the practical implications of its decision in terms that apply only to mandatory sentencing schemes. At the same time, we recognize that *Montgomery* spoke forcefully about what the Eighth Amendment requires in *any* case involving a juvenile homicide offender. So while these features of *Montgomery* do not compel a narrow reading of its holding, we must recognize when applying section 2254(d) that they do allow a reasonable jurist looking at the

whole body of relevant case law to read *Montgomery* narrowly, as limited to mandatory sentencing schemes.[3]

### 2. *Jones' Narrow Reading of Miller and Montgomery*

*Jones* resolves any remaining uncertainty about whether reasonable jurists could disagree over whether the Court's precedents establish a categorical prohibition against sentencing corrigible minors to life without parole. *Jones* is the Court's first (and so far only) case applying *Miller* and *Montgomery* to a discretionary life-without-parole sentence. It presented the Court with the opportunity to confirm that *Montgomery*'s expansive rationale established a categorical prohibition that applies to both mandatory and discretionary sentences. The *Jones* Court did not take that step.

Instead, *Jones* held that the petitioner's resentencing complied with *Miller* and *Montgomery* "because the sentence was not mandatory and the trial judge had discretion to impose a lesser punishment in light of Jones's youth." 593 U.S. at 120. To reach that conclusion, *Jones* endorsed a narrow

---

[3] Even before *Jones*, state and circuit courts split on how to read *Montgomery*. Some courts gave *Montgomery* the expansive meaning that Walker attributes to it. E.g., *Malvo v. Mathena*, 893 F.3d 265, 274 (4th Cir. 2018); *United States v. Briones*, 929 F.3d 1057, 1064 (9th Cir. 2019); *Commonwealth v. Batts*, 163 A.3d 410, 452 (Pa. 2017). Others concluded that *Miller* was satisfied if the sentencer had the ability to choose a sentence other than life without parole. E.g., *United States v. Sparks*, 941 F.3d 748, 754 (5th Cir. 2019); *People v. Skinner*, 917 N.W.2d 292, 312–14 (Mich. 2018). These pre-*Jones* cases do not control Walker's claim, but they are "indicative of a lack of clarity in the Supreme Court's jurisprudence." *Hall v. Zenk*, 692 F.3d 793, 799 (7th Cir. 2012). To be clear, however, we have reached an independent judgment as to what is "clearly established Federal law" for purposes of section 2254(d), as the Supreme Court instructed in *Andrew v. White*, 604 U.S. at —, 145 S. Ct. at 82.

interpretation of both *Miller* and *Montgomery*. *Jones* character-ized *Miller* as requiring "only that a sentencer follow a certain process" before imposing life without parole on a juvenile of-fender. *Id.* at 108, quoting *Miller*, 567 U.S. at 483. The Court rejected the petitioner's analogy to the Court's categorical prohibition cases "where the Court has recognized certain el-igibility criteria, such as sanity or a lack of intellectual disabil-ity, that must be met before an offender can be sentenced to death." *Id.* at 107, citing first *Ford v. Wainwright*, 477 U.S. 399 (1986), and then *Atkins v. Virginia*, 536 U.S. 304 (2002). *Jones* located *Miller* instead in the line of cases requiring "the indi-vidualized consideration of mitigating circumstances in capi-tal cases." *Id.* at 108. *Jones* then cast (or perhaps recast) *Mont-gomery* as holding only that *Miller*'s prohibition on mandatory sentencing schemes applies retroactively on collateral review. It emphasized that the Court had not granted certiorari in *Montgomery* to "consider whether the rule announced in *Mil-ler* should be expanded." *Id.* at 111.

*Jones*' narrow interpretation of *Miller* revived arguments about *Miller*'s limits that *Montgomery* had expressly rejected. See *Montgomery*, 577 U.S. at 208–11 (explaining that the "pro-cedural component" of *Miller*'s holding "does not replace but rather gives effect to *Miller*'s substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity"). And *Jones*' characteriza-tion of *Montgomery* failed to address much of *Montgomery*'s reasoning. Although *Jones* did not explicitly address or reject *Montgomery*'s articulation of *Miller*'s substantive holding, its silence on the central premise of *Montgomery*'s analysis speaks volumes, at least when we are trying to apply section 2254(d)(1) and to determine the range of decisions open to

fair-minded jurists trying to apply the Court's decisions in this field.

*Jones*' holding that the Eighth Amendment does not require an explicit or implicit finding of permanent incorrigibility also signaled a retreat from *Montgomery*'s reasoning. As Justice Thomas explained in his opinion concurring in the judgment:

> If *Montgomery* is correct about the existence of a concrete class of offenders who—as a matter of fundamental constitutional law—are categorically exempt from a sentence of life without parole, then there must be a determination as to whether Jones falls within that protected class. Otherwise, the "line" *Miller* ostensibly "drew … between children whose crimes reflect transient immaturity and those rare children whose crimes reflect irreparable corruption" is more fanciful than real.

*Id.* at 126 (Thomas, J., concurring in the judgment), quoting *Montgomery*, 577 U.S. at 209. Indeed, the Court has generally required factual findings to determine whether a prisoner is within the class of people eligible for a particular penalty. See *id.*, citing first *Moore v. Texas*, 586 U.S. 133, 142 (2019) (per curiam), and then *Madison v. Alabama*, 586 U.S. 265, 273, 282 (2019); e.g., *Panetti v. Quarterman*, 551 U.S. 930, 949 (2007) ("Once a prisoner seeking a stay of execution has made 'a substantial threshold showing of insanity,' the protection afforded by procedural due process includes a 'fair hearing' in accord with fundamental fairness." (quoting *Ford*, 477 U.S. at 426, 424 (Powell, J., concurring in part and concurring in the judgment))). *Montgomery* acknowledged that *Miller* had not

imposed a formal fact-finding requirement, but *Montgomery* was equally explicit that corrigible offenders sentenced to life without parole had been deprived of a substantive right. 577 U.S. at 209. Following *Montgomery*, some States adopted a variety of mechanisms to enforce the line that *Montgomery* had drawn between corrigible and incorrigible offenders. See *Jones*, 593 U.S. at 134–35 (Sotomayor, J., dissenting).

*Jones* concluded, though, that the states are not under any constitutional obligation to distinguish between corrigible and incorrigible youths. "In a case involving an individual who was under 18 when he or she committed a homicide, a State's discretionary sentencing system is both constitutionally necessary and constitutionally sufficient." *Id.* at 105. That sentence alone makes it difficult if not impossible to find that a state court has applied Supreme Court precedent unreasonably by upholding a juvenile sentence of life without parole imposed under a discretionary standard.[4]

---

[4] In the absence of Supreme Court guidance on what qualifies as a corrigibility finding, AEDPA deference is warranted for the additional reason that reasonable jurists could disagree about whether Walker's sentencing judge actually found him capable of change. The line between a conscientious discussion of mitigating factors and a finding of corrigibility may be difficult to draw. The transcript of Walker's sentencing hearing reveals that the sentencing judge acknowledged Walker's difficult childhood and expressed sympathy for the limited array of choices that he faced. The judge also expressed "hope" that Walker would be able to develop healthy relationships and grow as a person while he was incarcerated. The district court here treated these remarks as amounting to a finding of corrigibility, but reasonable jurists could disagree. Cf. *United States v. Grant*, 9 F.4th 186, 192 (3d Cir. 2021) (en banc) (sentencing judge said that defendant was "not that rarest [] exception referenced in *Miller*, where the lifetime without parole is appropriate").

After *Jones*, the status of *Montgomery*'s declaration that life without parole is an unconstitutional punishment for juvenile offenders capable of change, without apparently having been limited to sentences imposed under mandatory sentencing laws, simply is not clear. Although *Jones* reaffirmed that *Miller* applies retroactively, it stands in considerable tension with *Montgomery*'s explanation for *Miller*'s retroactivity.

To be sure, Walker has offered a reasonable way of resolving the tension between *Montgomery* and *Jones*. Even if no factual finding of permanent incorrigibility is required, it does not necessarily follow that a sentencing judge could find a juvenile homicide offender capable of change and still sentence him to life without parole. But this case comes to us on habeas review, not on direct appeal. The question before us is not whether we can or how we should best reconcile the Court's precedents. It is whether any fair-minded jurist could conclude that in a case involving a juvenile homicide offender sentenced to life without parole, the Eighth Amendment is satisfied by an individualized sentencing procedure. In light of *Jones*' narrow reading of the Court's own case law, the answer to that question must be yes.[5]

It was not unreasonable for the Wisconsin Court of Appeals to apply the clear holdings of *Miller* and *Jones* and to leave the implications of *Montgomery* for discretionary life-without-parole sentences to be resolved by the Supreme Court in a future case. The state court was not required to

---

[5] The Third Circuit sitting en banc rejected on direct appeal the same claim that Walker makes now. See *United States v. Grant*, 9 F.4th 186 (3d Cir. 2021) (en banc). Its decision supports our conclusion that the Wisconsin Court of Appeals' decision was not an unreasonable application of clearly established federal law.

anticipate a future decision holding that a sentencing judge's comment that a juvenile offender is capable of change entitles him to a meaningful opportunity for release during his lifetime, no matter how heinous the homicide. That may or may not be the "logical next step" in the Court's jurisprudence on juvenile homicide offenders, but for now, it suffices to observe that "there are reasonable arguments on both sides." *White v. Woodall*, 572 U.S. 415, 427 (2014). Because the state court reasonably applied *Jones* and because *Montgomery* does not compel a different conclusion, the district court's denial of habeas relief is AFFIRMED.